601 So.2d 256 (1992)
James Anthony DRAIN, Appellant,
v.
STATE of Florida, Appellee.
No. 91-749.
District Court of Appeal of Florida, Fifth District.
May 29, 1992.
*257 James B. Gibson, Public Defender, and Lyle Hitchens, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David S. Morgan, Asst. Atty. Gen., Daytona Beach, for appellee.
COWART, Judge.
After arresting the defendant on an outstanding warrant, the police officers, while searching him, found a substance in his pocket which they believed to be crack cocaine. However, after testing, the substance was found not to be a "controlled substance"[1]. The State charged the defendant with a violation of section 817.564(3), Florida Statutes, which makes it unlawful for any person to possess with intent to sell any "imitation controlled substance". The *258 statute, which this opinion analyzes, is as follows:
(1) ... the term "imitation controlled substance" means a ... substance in any form whatsoever which is not a controlled substance enumerated in chapter 893, which is subject to abuse, and which:

(a) By overall dosage unit appearance, including color, shape, size, markings, and packaging, or by representations made, would cause the likelihood that such a pill, capsule, tablet, or substance will be mistaken for a controlled substance unless such substance was introduced into commerce prior to the initial introduction into commerce of the controlled substance which it is alleged to imitate; or
(b) ... [is represented] ... to act like a controlled substance as a stimulant or depressant of the central nervous system, etc... .
(2) In those instances where the appearance of the dosage unit is not reasonably sufficient to establish that the substance is an imitation controlled substance, the court or authority concerned may consider, in addition to all other logically relevant factors, the following factors as related to "representations made" in determining whether the substance is an imitation controlled substance:
(a) Statements made by an owner or by anyone else in control of the substance concerning the nature of the substance or its use or effect.
(b) Statements made to the recipient that the substance may be resold for inordinate profit.
(c) Whether the substance is packaged in a manner normally used for illicit controlled substances.
(d) Evasive tactics or actions utilized by the owner or person in control of the substance to avoid detection by law enforcement authorities.
(e) Prior convictions, if any, of an owner, or anyone in control of the object, under state or federal law related to controlled substances or fraud.
(f) The proximity of the substances to controlled substances.
(3) It is unlawful for any person to manufacture, distribute, sell, give, or possess with the intent to manufacture, distribute, sell, or give an imitation controlled substance. Any person who violates this subsection is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. [Emphasis added].
* * * * * *
The defendant moved pursuant to Florida Rule of Criminal Procedure 3.190(c)(4), to dismiss the charges on two grounds: (1) that section 817.564 is unconstitutional on its face and void because it criminalizes essentially innocent conduct and because it is impermissibly vague and (2) that the substance in question was, in fact, wax, the possession of which is not illegal under section 817.564. The motion to dismiss asserted that the wax in the defendant's possession was not an imitation controlled substance "which is subject to abuse" as that phrase is used in section 817.564(1), and was interpreted in State v. Jones, 565 So.2d 788 (Fla. 1st DCA 1990).
The State traversed the defendant's motion. However, the traverse did not deny that the substance in question was wax and merely disagreed with the defendant's interpretation of the statutory phrase. The essence of the statutory interpretation dispute is that Jones and the defendant contend that the phrase "which is subject to abuse" refers to, modifies, and is part of the definition of the phrase "imitation controlled substance" and refers, in this case, to the wax, whereas the State contends that the quoted phrase refers to genuine controlled substances as enumerated in Chapter 893, i.e., the cocaine.[2]
The trial court agreed with the State's interpretation of the statute and disagreed with the First District Court's interpretation in Jones, and denied the defendant's motion. The defendant pled nolo contendere, *259 expressly reserving the right to appeal the denial of his motion to dismiss.[3] Because the State did not traverse the defendant's claim that the substance in question was wax that fact is uncontested and the proper interpretation of the statute appears to be the sole issue and to be dispositive of the case.
The subject of the main sentence in section 817.564(1) is "imitation controlled substance". In very broad inclusive language that term is defined as being in effect any "substance in any form whatsoever", but then the statute proceeds to qualify and modify that broad inclusive description in various ways. The first three modifying qualifications are three provisos each starting with the word "which". The first "which" proviso is a direct exclusion. The second and third "which" provisos are inclusive conditions which qualify and limit the basic broad inclusive description. The first qualifying proviso commencing with the word "which" excludes from the broad definition true controlled substances enumerated in Chapter 893. The second qualifying proviso requires that the subject of the sentence, being the "imitation controlled substance", to be "subject to abuse". The third "which" proviso precedes two alternative or disjunctive limiting qualifications contained in two subparagraphs (1)(a) and (1)(b). Subparagraph (1)(a) of the description requires that the "imitation controlled substance" have a certain appearance or that the defendant make certain types of representations relating to it. However, subparagraph (1)(a) itself contains an excluding or excepting clause commencing with the word "unless". This "unless" clause, being an exception to an essential inclusive portion of the description of the substance being defined (i.e., "imitation controlled substance"), in and of itself excludes certain substances that might otherwise be included within the basic broad definition. This "unless" exclusion to the basic broad definition of "imitation controlled substance" refers to imitation substances which were "introduced into commerce prior to the initial introduction into commerce of the controlled substance which it is alleged to imitate". In the context of this case this means that if wax "was introduced into commerce prior to the initial introduction into commerce of" cocaine, then the wax is excluded from the definition of an "imitation controlled substance" although it otherwise might be within the statutory definition of "imitation" cocaine. The purpose of this "unless" clause appears to be to exclude commercial substances in existence before commerce began in the genuine controlled substance, thereby limiting "imitation" substances to substances manufactured and sold, (i.e., commercialized) after the genuine substance was commercialized and solely for the purpose of imitating the genuine substance.
The information in this case as amended does not allege either when the claimed "imitation controlled substance" in this case (i.e., wax) was first introduced into commerce,[4] nor the date when cocaine was "initially [introduced] into commerce". In order to bring the claimed "imitation controlled substance" in this case within the essential definitional requirements contained in subparagraph (1)(a) of the statute, it was incumbent upon the State to allege what the claimed "imitation controlled substance" actually was and to allege the essential facts about its appearance, or representations made about it by the defendant, which the State claims might cause it to be mistaken for a genuine controlled substance. This is because subparagraph (1)(a) (or in the disjunctive subparagraph (1)(b))[5] are essential parts of the statutory definition of an "imitation controlled substance" and therefore relate to "essential *260 facts constituting the offense charged" which must be alleged under Rule 3.140(d)(1) and are not a "statutory exception, excuse or proviso" which is not required to be negatived by allegation under Rule 3.140(k)(4).[6]
Subparagraph (3) of section 817.564, Florida Statutes, which is the portion of the statute criminalizing conduct relating to "imitation controlled substances" makes it unlawful to "possess" an "imitation controlled substance" only if such possession is combined with "the intent to manufacture, distribute, sell or give" such imitation controlled substance. It was not until the amended information that this essential specific intent was alleged.
The supreme court has held that knowledge of the nature of a substance possessed is an essential implied element of every crime of possession of a controlled substance and that even in a case involving a genuine controlled substance the accused must be shown to have known what the substance actually was, see State v. Dominguez, 509 So.2d 917 (Fla. 1987); likewise and for even better reasons, surely, when charged with the felony possession of an imitation controlled substance, the State must allege and prove that the accused knew what the substance was that he possessed and that it was an imitation controlled substance.
In substance and effect, under this statute and general law, prosecutable imitation controlled substances are:
ALL substances of every form whatsoever;
WHICH are not genuine controlled substances; and
WHICH are subject to abuse; and
WHICH,
because of appearance OR because of representations, would likely cause the substance to be mistaken for a genuine controlled substance;
UNLESS
such substance was already in commerce before the initial introduction into commerce of the genuine controlled substance sought to be imitated; and
PROVIDED
such substances are manufactured, distributed, sold, given or possessed with the specific intent to manufacture, distribute or give the substance as an imitation controlled substance; and
PROVIDED
such substances are possessed with knowledge that it is an imitation controlled substance.
In the interpretation of statutes the judicial function undertakes to understand what the legislature intended to accomplish by enactment of the statute. In general, the construction of a criminal statute usually results in visualizing some specific conduct which is harmful to the public generally or to some class of the public, which conduct the legislature is attempting to eliminate or minimize by penalizing it with criminal sanctions.
Chapter 893 is easy to understand in that it criminalizes the possession of drugs ("controlled substances"), the ingestion of which is, in the opinion of our law-makers, harmful to the individual and to society generally. However, the "imitation controlled substance statute", section 817.564(3), Florida Statutes, presents extraordinary difficulty in this particular in that it criminalizes the possession of essentially non-harmful substances because from appearance or representations such non-harmful substances might "likely" be mistaken for the harmful drugs criminalized by Chapter 893. The ostensible class of *261 the general public protected by the "imitation controlled substance" statute appears to be buyers of illegal drugs. Because genuine purchasers of illegal drugs (those having or acquiring such drugs for ingestion) are themselves lawbreakers, they constitute an unusual class to protect by criminalizing possession of other lawful, non-harmful substances. Genuine purchasers of illegal drugs have legal remedies in civil and criminal law (fraud and obtaining property by false pretenses) but they usually resort to more effective remedies outside the law. All known arguments that genuine buyers of illegal drugs need legal protection from being "fooled", "conned" or defrauded by misrepresentation of harmless substances sound shallow and unconvincing. No reported case of a prosecution for "imitation controlled substances" has been found involving a "genuine" purchaser of illegal drugs. Just as there are two classes of drugs  the genuine and the imitation  likewise, there are two classes of drug buyers  the genuine and the imitation. The "imitation" drug buyer is the undercover law enforcement officer who, by appearances and representations, endeavors to cause himself to be mistaken for a genuine buyer of illegal drugs and, subject to the limitations contained in "entrapment" theories, endeavors, by artifice, to cause sellers of illegal drugs to expose themselves to detection and prosecution. When the imitation buyer (the undercover agent) is successful, evidence is obtained against the genuine seller of genuine illegal drugs. However, once in a while, by selling non-harmful "imitation" drugs to the "imitation" buyer, the fox outfoxes the hound. The "imitation controlled substance" statute criminalizes that conduct.[7] A cynic might think that the object of the imitation controlled substance statute is to protect the imitation buyer (the undercover agent) from being embarrassed when he is outdone by his intended prey, the drug seller.
Be that as it may, that scenario, however interesting, is not the facts in this case. There is no allegation or evidence of any conduct of the accused that caused the wax to appear to the arresting officers to be cocaine nor any misrepresentations made by the accused relating to the wax or of any drug transaction proposed by the accused, that might be asserted to have been made to induce the law enforcement officers to believe that the wax was a genuine controlled substance. The officers merely found the wax on the defendant when arresting him for some matter unconnected with the wax. If they were fooled into believing the wax was a controlled substance, they fooled themselves; the defendant didn't do it and should not be convicted of a crime because the law enforcement officers misled themselves into believing that the wax was cocaine. It is to make the statute inapplicable to the facts in this and similar cases that the statute requiring the State to make allegations about the defendants' conduct in initially by appearances or representations, causing the substance in question to imitate a genuine controlled substance.
It is a universally recognized rule of common law pleading in criminal cases, adopted by the due process clauses of both federal and state constitutions as well as being emulated and codified by statute[8] that statutes defining crimes are to be strictly construed against the State and most favorably to the accused. In addition due process as well as original, specific, constitutional provisions[9] relating to informing the accused of the nature and cause of the accusation against him as well as emulating rules of procedure[10] require that the essential facts constituting the offense charged be set forth in the charging document as well as proved beyond a reasonable *262 doubt at trial.[11]
The original information in this case charged the defendant:
did, in violation of Florida Statute 817.564, possess an imitation controlled substance, to-wit: Cocaine.
The information after amendment alleged only that the defendant possessed an imitation controlled substance, to-wit: cocaine "with" intent to distribute, sell, or give away an imitation controlled substance.
The charging document in this case, even as amended, entirely fails to adequately allege an offense under section 817.564. In fact at best it merely alleges that the defendant did possess an "imitation controlled substance" with intent to distribute, sell or give it away.
We need not dwell upon the fact but actually the information is substantially defective in that it is self-contradictory on its face. In pleading, the term "to-wit" is a scilicet or videlicet, means "that is to say", "namely" or "specifically", and is used to give emphasis, specification and particularity to make more clear a preceding more general term. Here the information alleges the general term "imitation controlled substance" and gives as a more specific allegation the word "cocaine". However, cocaine is a "genuine" controlled substance and is, as such, excluded from the statutory definition of an "imitation controlled substance". Therefore the videlicet, or specification, itself contradicts, and is inconsistent with, the general term ("imitation controlled substance") it attempts to make more specific.
The information is this case fails to state essential facts constituting a violation of section 817.564 in that the information (1) does not allege what the imitation substance actually was, (2) does not clearly allege what genuine controlled substance it was intended to imitate, (3) does not allege that the imitation substance was subject to abuse, (4) does not allege the statutory prerequisites relating to either the appearance of the substance or the defendant's representations made as to it, (5) does not allege that such alleged appearance or representations were likely to cause the imitation substance to be mistaken for the genuine substance, (6) does not allege that the defendant introduced the particular imitation substance into "commerce" after the initial introduction into commerce of the genuine controlled substance it is alleged to imitate (per section 817.564(1)(a)) for the purpose of imitation, and (7) does not allege the defendant's essential knowledge of the imitative character of the substance in question. In addition the information should clearly allege the defendant's intent to deceive and to cause the imitation substance to be mistaken for some specified controlled substance. For those reasons, as well as the interpretation of the First District Court of Appeal in Jones, which we hereby adopt,[12] the trial court should have granted the defendant's "(c)(4)" motion.
The trial court's order denying the defendant's motion to dismiss is reversed and the cause remanded with directions that *263 the trial court grant that motion and dismiss the information and dismiss the cause and discharge the defendant as to this charge.[13]
REVERSED and REMANDED.
GOSHORN, C.J., and DAUKSCH, J., concur.
NOTES
[1] Section 893.02(4), Fla. Stat.
[2] Thus "the language [in the statute] is susceptible of differing constructions" and sets the stage for a judicial interpretation of the statute, see § 775.021(1), Fla. Stat.
[3] See Florida Rule of Criminal Procedure 3.172(c)(iv).
[4] Aside from the production of wax as a by-product of the petroleum industry which has occurred within the last century, we can, with confidence, take notice of the fact that bees predate recorded history and that they secrete wax which has been used in commerce by mankind from earliest recorded history.
[5] See Florida Rule of Criminal Procedure 3.140(k)(5).
[6] If the very definition of a controlled substance was not itself so inherently intertwined in the definition of an "imitation controlled substance", then the first "which" proviso in the definition, which excludes genuine controlled substances enumerated in Chapter 893, might arguably be a statutory exception which is not required to be negatived by allegations under Rule 3.140(k)(4) but must be asserted as a defense. This would be a safe construction because it would apply only when the defendant "defends" by asserting the alleged imitation controlled substance was not "imitation" but "genuine". Such a "jumping from the frying pan into the fire" defense would be rarely, if ever, asserted.
[7] That scenario is the plot of most classic children's stories, i.e., Aesops Fables, Uncle Remus (Brer Rabbit), as well as The Three Little Pigs, Little Red Riding Hood, etc.
[8] See § 775.021(1), Fla. Stat.
[9] See, e.g., Section 16, Article 1, Declaration of Rights, Florida Constitution.
[10] See Florida Rules of Criminal Procedure 3.140(d)(1) and (o).
[11] Aside from giving the required notice to the accused of the allegations against him the reason for the rule of pleading is to permit pretrial settlement of issues relating to essential elements of the offense and, further, because in order to establish a prima facie case at trial sufficient to survive a motion for a judgment of acquittal, the State need only submit some evidence as to each factual allegation in the information. In other words, the State need only prove what is alleged in the information; therefore it is necessary that all facts essential to the statement of a substantive criminal cause of action be alleged.
[12] To construe the second "WHICH" proviso in section 817.564(1), Florida Statutes, ("which is subject to abuse") to relate to genuine controlled substances under chapter 893, as the State contends, would be to construe this statutory ambiguity most favorable to the State, rather than the accused, contrary to section 775.021(1), Florida Statutes, and general rules of statutory construction, and make that clause either nonsensically redundant or cause it to suggest that some substances controlled by Chapter 893 are subject to abuse and some are not and that only those described in Chapter 893 which are subject to abuse can be illegally imitated. All substances controlled by Chapter 893 are controlled because all such substances are "subject to abuse".
[13] Our disposition of this case applying the rules and statute (§ 775.021(1), Fla. Stat.) directing a strict construction of criminal statutes permits us to avoid the more difficult and serious issue raised as to the constitutionality, vel non, of the statute as against arguments that it criminalizes inherently innocent conduct (such as the possession of ordinary wax), see generally, In re Forfeiture of 1969 Piper Navajo, 592 So.2d 233 (Fla. 1992) and is unconstitutionally vague in using undefined, general, subjective-based words and phrases such as "abuse", "subject to abuse", "commerce", "introduced into commerce", "will be mistaken", "overall dosage unit appearance". Note and compare the extended effort to define the one term "representations made" contained in section 817.564(2), Florida Statutes.