684 So.2d 736 (1996)
Jerry Jay CHICONE, III, Petitioner,
v.
STATE of Florida, Respondent.
No. 85136.
Supreme Court of Florida.
October 24, 1996.
Rehearing Denied December 10, 1996.
*737 Terrence E. Kehoe of the Law Offices of Terrence E. Kehoe, Orlando; and James M. Russ and Tad A. Yates of the Law Offices of James M. Russ, P.A., Orlando, for Petitioner.
Robert A. Butterworth, Attorney General and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Respondent.
ANSTEAD, Justice.
We have for review Chicone v. State, 658 So.2d 1007 (Fla. 5th DCA 1994). We accepted jurisdiction based upon conflict with numerous decisions, including: Skelton v. State, 609 So.2d 716, 717 (Fla. 2d DCA 1992); Moffatt v. State, 583 So.2d 779, 781 (Fla. 1st DCA 1991); Kuhn v. State, 439 So.2d 291, 293 (Fla. 3d DCA 1983); Brown v. State, 428 So.2d 250, 252 (Fla.), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983); and Wale v. State, 397 So.2d 738, 739 (Fla. 4th DCA 1981). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We hold that guilty knowledge is an element of possession of a controlled substance under section 893.13(1)(f), Florida Statutes (1991), and possession of drug paraphernalia under section 893.147(1), Florida Statutes (1995). However, we find that the State was not required to allege guilty knowledge in the information charging petitioner.

PROCEEDINGS TO DATE
Jerry Jay Chicone, III, was convicted of possession of cocaine, a third-degree felony,[1] and possession of drug paraphernalia, a *738 first-degree misdemeanor.[2] On appeal, Chicone claimed that the trial court should have dismissed the information because neither count thereof alleged the essential element of knowledge. Chicone also asserted that the trial court erred in refusing to instruct the jury that the State had to prove he knew the substance he possessed was cocaine and the object he possessed was drug paraphernalia. The district court rejected these contentions, affirmed Chicone's convictions, but reversed on several sentencing issues.

LAW and ANALYSIS

Guilty Knowledge
We hold that guilty knowledge is part of the statutory offenses charged. Initially, we note that the state of the law on this issue is unclear, and many of the decisions discussing the issue turn on the nature and extent of the proof required to prove possession of a contraband substance rather than the precise issue we address today. In addition, the cases often turn on whether actual possession or constructive possession is charged, with some decisions suggesting that guilty knowledge must be shown in constructive possession cases but not in actual possession cases.
An excellent example of the uncertainty is provided in the case of Green v. State, 602 So.2d 1306 (Fla. 4th DCA 1992), wherein the panel of judges issued three separate opinions. Judge Farmer authored a majority opinion finding the evidence was sufficient to support Green's conviction for possession of a small amount of cocaine. Judge Farmer's opinion expressed the view that guilty knowledge is required in trafficking cases but not in "simple" drug possession offenses. Judge Stone's special concurrence disputed the validity of this distinction:
In my judgment, the legislature's intent is that the evidence required and permissible inferences are the same for both possession and trafficking by possession, but for the additional required proof of the weight of the drugs.
Id. at 1310. Judge Glickstein dissented to the holding that the evidence was sufficient to establish Green's knowledge.

Medlin
Long ago, we held in a prosecution for unlawful possession of liquor that "[t]here must ... be a conscious and substantial possession by the accused, as distinguished from a mere involuntary or superficial possession." Reynolds v. State, 92 Fla. 1038, 1041, 111 So. 285, 286 (1926). However, since that time we have not been entirely clear on the issue in drug possession cases. Two of our decisions issued in 1973 are illustrative. In State v. Medlin, 273 So.2d 394 (Fla.1973), we quashed a district court decision which had found the evidence insufficient to sustain Medlin's conviction for unlawfully delivering an illegal drug to another, and explained:
Defendant, in the instant case, is charged with the commission of the statutory offense of unlawfully delivering to another *739 a barbiturate or central nervous system stimulant. Proof that defendant committed the prohibited act raised the presumption that the act was knowingly and intentionally done. Defendant then sought to prove lack of knowledge as to the nature of the drug delivered to Cathy Driggers. But the testimony of the Driggers girl, that he told her one capsule would make her "go up" and another pill was to be taken when she came down from the high, is evidence that defendant was aware of the nature of the drug involved. The proper arbiter was the jury.
To reiterate, the State was not required to prove knowledge or intent since both were presumed from the doing of the prohibited act. Defendant's attempt, by way of defense, to prove lack of knowledge was rebutted by the Driggers girl's testimony which the jury was entitled to accept over that of the defendant.
Id. at 397 (emphasis added). Medlin is the case most cited for the proposition that guilty knowledge is not an element of a simple possession crime. However, by our holding, we substantially begged the question of the nature of the guilty knowledge required by the statute.
We held in Medlin that a jury question was presented as to whether the "defendant was aware of the nature of the drug involved." Id. That is, we held that the State established a prima facie case and sufficient proof that the "defendant was aware of the nature of the drug" to get the case to the jury. That's a far cry from holding that guilty knowledge is unnecessary. Of course, if the defendant's awareness of the nature of the drug was not a necessary component of the crime, there would be no need for the jury to resolve that issue. Medlin stands for the proposition that evidence of actual, personal possession is enough to sustain a conviction. In other words, knowledge can be inferred from the fact of personal possession.
Shortly after Medlin, we reversed a First District Court decision upholding a conviction for drug possession, and held the evidence was insufficient on the essential element of the defendant's knowledge of the contraband drug. See Smith v. State, 279 So.2d 27 (Fla.1973). It is apparent in Smith that we required proof of the knowledge of the contraband in order to sustain a conviction for simple possession. Of course, Smith was a joint possession case, and our comments requiring proof of the "essential knowledge" on the defendant's part must be taken in that context. Medlin and Smith mirror much of the confusion in the case law on the issue of guilty knowledge in drug possession cases.

Frank
In Frank v. State, 199 So.2d 117 (Fla. 1st DCA 1967), the court expressly held that knowledge of the illicit nature of the substance possessed was an element of the crime of possession. Judge Wigginton's opinion in Frank contains one of the clearest expressions of the reason knowledge is required in a possession offense:
Scienter constitutes a factual issue to be resolved by the jury upon proper instructions as to the legal principles pertinent to its consideration. This is not a mere technicality in the law, but a legal principle which must be observed in order to safeguard innocent persons from being made the victims of unlawful acts perpetrated by others, and of which they have no knowledge. It is a safeguard which must be preserved in the interest of justice so that the constitutional rights of our citizens may be preserved. For these reasons it is our view that the error committed by the trial judge so infects the judgment that it should not be permitted to stand.
Id. at 121; see also Spataro v. State, 179 So.2d 873 (Fla. 2d DCA 1965). Similarly, in Rutskin v. State, 260 So.2d 525 (Fla. 1st DCA 1972), the court restated the rationale for requiring guilty knowledge:
There was no evidence that the appellant had knowledge that the unopened parcel contained marijuana. The fact that he happened to be the addressee of the parcel obviously does not supply the evidence that he knew that the parcel contained marijuana or any other contraband. If this were not so, any innocent person could be convicted of possession of marijuana just because *740 he happens to be the recipient of a package containing marijuana.
Id. at 526. Our Medlin opinion expressly distinguished Frank because Frank involved constructive possession as opposed to the case of actual possession involved in Medlin. Medlin similarly distinguished Rutskin.[3]

Oxx
Perhaps the most comprehensive discussion of the issue is contained in Judge Cowart's opinion in State v. Oxx, 417 So.2d 287 (Fla. 5th DCA 1982).[4] In Oxx, the Fifth District discussed a statute which made it unlawful to possess certain contraband articles on the grounds of any county detention facility. At issue was whether the statute was unconstitutional due to a lack of a scienter element. The court held that the constitutional issue was mooted because guilty knowledge was an element of the statute, as it was in other criminal possession statutes:
In its order, the trial court held that the failure of the statute to expressly require mens rea or scienter made unknowing possession a criminal offense. This is not correct. Knowledge of possession is generally considered a part of the definition of possession as used in criminal statutes making possession a crime. Section 893.13, Florida Statutes (1981), prohibiting the actual or constructive possession of a controlled substance, and its predecessors, have never specifically required "knowing" possession, yet possession has always been defined to include knowledge of the same. A similar construction has been placed on other criminal possession statutes. Although the legislature may punish an act without regard to any particular (specific) intent, the State must still prove general intent, that is, that the defendant intended to do the act prohibited.
Proof of an act does raise a presumption that it was knowingly and intentionally done. However, there is a distinction in presuming knowledge from actual possession and from constructive possession in that the State can make out a prima facie case of knowledge by proof of actual or exclusive constructive possession, but proof of nonexclusive constructive possession alone is insufficient to justify an implication of knowledge. In the latter situation, the State must present some corroborating evidence of knowledge to establish a prima facie case.
In summary, the statute in the instant case is constitutional. Further, possession in the context of this statute means possession and knowledge of the same, and appellee's knowledge (or lack of knowledge) of his possession is, subject to an appropriate instruction, an issue for the jury.
Id. at 290-91 (footnotes omitted).[5] We concur in what we perceive to be the essential thrust of the Oxx opinion, that "guilty knowledge" *741 must be established in a simple drug possession case.[6]

Common Law and Statutory Construction
Although we are essentially covering the same ground discussed by Judge Cowart in Oxx, we do so to more fully explain our holding. As noted in Judge Cowart's opinion, courts usually construe criminal statutes in light of the background rules of the common law. In addition, of course, statutes defining crimes are to be strictly construed against the State and most favorably to the accused.[7]
At common law, all crimes consisted of an act or omission coupled with a requisite mental intent or mens rea.[8]State v. Oxx, 417 So.2d 287, 288-89 (Fla. 5th DCA 1982). The general rule was that scienter or mens rea was a necessary element in the indictment and proof of every crime. United States v. Balint, 258 U.S. 250, 251, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922). This rule was subsequently followed in regard to statutory crimes even where the statutory definition did not expressly include scienter in its terms. Id. at 251-52, 42 S.Ct. at 302; Staples v. United States, 511 U.S. 600, 620 n.1, 114 S.Ct. 1793, 1805 n. 1, 128 L.Ed.2d 608 (1994)(stating presumption of mens rea has been applied not only to statutes codifying traditional common law offenses but also to offenses that are "entirely a creature of statute")(Ginsburg, J., concurring). However, since the legislature is vested with the authority to define the elements of a crime, determining whether scienter is an essential element of a statutory crime is a question of legislative intent. Staples, 511 U.S. at 603-605, 114 S.Ct. at 1796-97; Morissette v. United States, 342 U.S. 246, 258-59, 72 S.Ct. 240, 247, 96 L.Ed. 288 (1952); Balint, 258 U.S. at 252, 42 S.Ct. at 302.
Historically, some courts have drawn a distinction between statutes codifying crimes recognized at common law and statutes that proscribe conduct not prohibited at common law. The common law crimes were referred to as crimes mala in se or "infamous" crimes, and evil intent was considered to be inherent in the idea of the offense.[9]Id. In contrast, the category of crimes proscribing conduct not prohibited at common law were classified as crimes mala prohibita, and the doing of the act was considered punishable, regardless of intent. Thus, one rule of statutory interpretation has emerged suggesting that the legislature continued to require intent where codifying crimes mala in se, but where codifying crimes mala prohibita, intent was not required. Id. However, many courts and commentators have strongly suggested that this is an "unsound criterion to follow." See, e.g., Francis B. Sayre, Public Welfare Offenses, 33 Colum. L.Rev. 55, 71 (1933); cf. Morissette, 342 U.S. at 260, 72 S.Ct. at 248 ("Neither this Court nor, so far as we are aware, any other has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes *742 that require a mental element and crimes that do not."). One critic notes that "[m]any offenses which are held not to require proof of mens rea are highly immoral; and many requiring it are not inherently immoral at all." Sayre, supra, at 71. We agree that this method of statutory analysis is of little help here.
Other courts have focused on the patent inconsistency in the imposition of substantial criminal sanctions to conduct that does not include scienter. See United States v. X-Citement Video, Inc., 513 U.S. 64, ___, 115 S.Ct. 464, 469, 130 L.Ed.2d 372 (1994)(holding that harsh penalties of up to ten years in prison and substantial fines and forfeiture for violation of child pornography statute supported interpretation of statute to require that defendant have knowledge of minority of performer); see also Cohen v. State, 125 So.2d 560 (Fla.1960) (statute prohibiting sale of obscene material required that State prove defendant's knowledge of obscene nature of material). For example, the United States Supreme Court has stated:
Similarly, commentators collecting the early cases have argued that offenses punishable by imprisonment cannot be understood to be public welfare offenses, but must require mens rea. See R. Perkins, Criminal Law 793-798 (2d ed.1969) (suggesting that the penalty should be the starting point in determining whether a statute describes a public welfare offense); Sayre, supra, at 72 ("Crimes punishable with prison sentences ... ordinarily require proof of a guilty intent").
In rehearsing the characteristics of the public welfare offense, we, too, have included in our consideration the punishments imposed and have noted that "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." Morissette, 342 U.S., at 256, 72 S.Ct., at 246. We have even recognized that it was "[u]nder such considerations" that courts have construed statutes to dispense with mens rea. Ibid.

Our characterization of the public welfare offense in Morissette hardly seems apt, however, for a crime that is a felony.... After all, "felony" is, as we noted in distinguishing certain common law crimes from public welfare offenses, "`as bad a word as you can give to man or thing.'" Morissette, supra, at 260, 72 S.Ct., at 248 (quoting 2 F. Pollock & F. Maitland, History of English Law 465 (2d ed. 1899)). Close adherence to the early cases described above might suggest that punishing a violation as a felony is simply incompatible with the theory of the public welfare offense. In this view, absent a clear statement from Congress that mens rea is not required, we should not apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with mens rea. But see Balint, supra.

Staples, 511 U.S. at 617-18, 114 S.Ct. at 1803-04 (footnotes omitted). We agree with this view and, consistent therewith, conclude that the criminal statutes at issue before us today are more akin to offenses that presume a scienter requirement in the absence of express contrary intent.[10] The penalties imposed *743 for violating sections 893.13(6)(a) and 893.147(1) are incongruous with crimes that require no mens rea. For example, a defendant convicted of possession of a controlled substance can receive up to five years imprisonment and a fine of up to $5,000. §§ 775.082(3)(d), 775.083(1)(c), Fla. Stat. (1995).
We are also influenced by the fact that "[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." Dennis v. United States, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951). The United States Supreme Court has stated that offenses that require no mens rea generally are disfavored, and has suggested that some indication of legislative intent, express or implied, is required to dispense with mens rea as an element of a crime. Staples, 511 U.S. at 605-06, 114 S.Ct. at 1797. There is no such indication of legislative intent to dispense with mens rea here. Our holding depends substantially on our view that if the legislature had intended to make criminals out of people who were wholly ignorant of the offending characteristics of items in their possession, and subject them to lengthy prison terms, it would have spoken more clearly to that effect.[11]See Staples, 511 U.S. at 618-19, 114 S.Ct. at 1804. Interpreting the statutes as dispensing with scienter would "criminalize a broad range of apparently innocent conduct." Liparota v. United States, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985). As noted in Liparota, a strict reading of the statute with no scienter requirement would render criminal a mail carrier's unknowing delivery of a package which contained cocaine:
Of course, [the legislature] could have intended that this broad range of conduct be made illegal, perhaps with the understanding that prosecutors would exercise their discretion to avoid such harsh results. However, given the paucity of material suggesting that [the legislature] did so intend, we are reluctant to adopt such a sweeping interpretation.
Id. at 427, 105 S.Ct. at 2089. This is precisely the point made long ago by the Court in Rutskin v. State which we have previously quoted, and with which we agree.[12]
As eloquently stated by Judge Wigginton in Frank, the requirement of guilty knowledge "must be observed in order to safeguard innocent persons from being made the victims of unlawful acts perpetrated by others, and of which they have no knowledge." 199 So.2d at 121. Moreover, we agree:
The group of offenses punishable without proof of any criminal intent must be sharply limited. The sense of justice of the community will not tolerate the infliction of punishment which is substantial upon those innocent of intentional or negligent wrongdoing; and the law in the last analysis must reflect the general community sense of justice.
Sayre, supra, at 70. In short, we conclude that good sense and the background rule of the common law favoring a scienter requirement *744 should govern interpretation of the two statutes in this case. We believe it was the intent of the legislature to prohibit the knowing possession of illicit items and to prevent persons from doing so by attaching a substantial criminal penalty to such conduct. Thus, we hold that the State was required to prove that Chicone knew of the illicit nature of the items in his possession.[13] As all agree, including the State, the legislature would not ordinarily criminalize the "innocent" possession of illegal drugs. Silence does not suggest that the legislature dispensed with scienter here.
The State, to its credit, does not claim that a defendant shown to be without guilty knowledge could be convicted under the possession statute. Rather, the State contends that lack of knowledge of the illicit nature of the item possessed should be raised and proven as an affirmative defense. We disagree. Nowhere has the legislature provided for such an affirmative defense. Furthermore, if the statute did not require guilty knowledge, then obviously a person who possessed an illicit object even without knowledge of its illicit nature would be as guilty of violating the statute (that had no scienter requirement) as one who did have knowledge. Lack of knowledge could hardly be a defense to a statute that did not require such knowledge. Hence, the State's position really supports our holding and we commend the State for its forthright approach and candor.

Sufficiency of the Information
Although by statutory construction we find that guilty knowledge is an element of the crimes defined in sections 893.13(6)(a) and 893.147(1), we hold that the trial court did not err in denying petitioner's motion to dismiss the information. As a general rule, an information must allege each of the essential elements of a crime to be valid. State v. Dye, 346 So.2d 538, 541 (Fla.1977). However, because the legislature has the primary authority for defining crimes, it will be the rare instance that an information tracking the language of the statute defining the crime will be found to be insufficient to put the accused on notice of the misconduct charged. Further, under rule 3.140(o), Florida Rules of Criminal Procedure, an information will not be dismissed on account of any defect in the information
unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.
In this case, we find it was sufficient that the information tracked the language of each statute. The information was not so defective as to rise to the level denoted in rule 3.140(o).
Additionally, since we find that guilty knowledge is implicit in the concept of possession as provided in the statute, it need not be specifically alleged in the information in a manner more explicit than that provided in the statute. See State v. Scarborough, 170 So.2d 458 (Fla. 2d DCA 1965)(knowledge or scienter is implicit in the language of the statute barring use of a forged prescription and does not have to be alleged separately); see also State v. Harris, 439 So.2d 265, 270 (Fla. 2d DCA 1983)(holding that accused's constitutional right to be informed of charges against him is not infringed upon by indictment which tracks statute governing offense), review denied, 450 So.2d 486 (Fla. 1984).
Therefore, we approve the district court's finding that the State did not have to specifically allege in its information that Chicone knew the substance he possessed was cocaine, or that he knew the object he possessed was drug paraphernalia. Chicone, 658 So.2d at 1009; see also State v. Pajon, 374 So.2d 1070 (Fla. 3d DCA 1979).

Sufficiency of Standard Jury Instructions
We must also determine whether the jury instructions on guilty knowledge *745 were sufficient. A defendant has the right to have a court correctly and intelligently instruct the jury on the essential and material elements of the crime charged and required to be proven by competent evidence. Gerds v. State, 64 So.2d 915, 916 (Fla.1953). When an instruction excludes a fundamental and necessary ingredient of law required to substantiate the particular crime, such failure is tantamount to a denial of a fair and impartial trial. See id.
At trial, the judge instructed the jury on count one, in pertinent part, as follows:
Certain drugs and chemical substances are by law known as controlled substances. Cocaine is a controlled substance. Before you can find Mr. Chicone guilty of possession of cocaine, the State of Florida must prove the following three elements beyond a reasonable doubt.
One, Mr. Chicone possessed a certain substance. Two, the substance was cocaine. Three, Mr. Chicone had knowledge of the presence of the substance. To possess means to have personal charge of or exercise the right of ownership, management or control over the thing possessed.
Possession may be actual or constructive. If a thing is in the hand of or on the person or in a bag or container in the hand of or on the person or is so close as to be within ready reach, it is under the control of the person, it is in the actual possession of that person. If a thing is in a place over which the person has control or in which the person has hidden or concealed it, it is in the constructive possession of the person.
If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed. If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed. That is as to count one, possession of cocaine.
(Emphasis added.) As to count two, the judge instructed the jury, in pertinent part, as follows:
Before you can find Mr. Chicone guilty of possession of drug paraphernalia, the state must prove the following two elements beyond a reasonable doubt. One, that Mr. Chicone used or had in his possession with intent to use drug paraphernalia. Two, that Mr. Chicone had knowledge of the presence of the drug paraphernalia.

To possess means to have certain charge of or to exercise the right of ownership, management or control over the thing possessed. Possession may be actual or constructive. If a thing is in the hand of or on the person or in a bag or container in the hand of or on the person, or is so close as to be within ready reach and is under the control of the person, it is in the actual possession of that person.
If a thing is in a place over which the person has control or in which the person has hidden or concealed it, it is in the constructive possession of that person. If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed. If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.
(Emphasis added.) These are the standard jury instructions on these offenses.
We stated earlier that the State must prove guilty knowledge to establish the defendant's possession of a controlled substance or drug paraphernalia. At trial, Chicone proffered instructions that required the jury to find that the substance he possessed was known to him to be cocaine and that the object he possessed was known to him to be drug paraphernalia in order to convict him. The trial court denied these instructions and gave the standard jury instructions set out above along with the standard jury instructions on reasonable doubt, which the trial judge read twice.
While the existing jury instructions are adequate in requiring "knowledge of the presence of the substance," we agree that, if specifically requested by a defendant, the trial court should expressly indicate to jurors that guilty knowledge means the defendant must have knowledge of the illicit nature of *746 the substance allegedly possessed.[14] We hold that the defendant was entitled to a more specific instruction as requested here.

CONCLUSION
We quash Chicone v. State, 658 So.2d 1007 (Fla. 5th DCA 1994), because it held that the State did not have to prove that Chicone knew of the illicit nature of the items he possessed under sections 893.13(6)(a) and 893.147(1), Florida Statutes (1993), and find that it was error for the trial court to deny Chicone's request for a special jury instruction on knowledge. We remand for further proceedings consistent with this opinion.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES and HARDING, JJ., concur.
WELLS, J., recused.
NOTES
[1] § 893.13(1)(f), Fla. Stat. (1991) (now codified at section 893.13(6)(a), Florida Statutes (1995)):

It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter. Any person who violates this provision commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] § 893.147(1), Fla. Stat. (1995):

USE OR POSSESSION OF DRUG PARAPHERNALIAIt is unlawful for any person to use, or to possess with intent to use, drug paraphernalia:
(a) To plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, or conceal a controlled substance in violation of this chapter; or
(b) To inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter.
Any person who violates this subsection is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
Unlike the possession of a controlled substance statute, the drug paraphernalia statute does not specify that possession must be actual or constructive. However, we find this not dispositive. All crimes of possession may be actual or constructive. See, e.g., Fla. Std. Jury Instr. (Crim.) 245. Case law interpreting the meaning of actual or constructive possession of a controlled substance under section 893.13(1)(f) is equally applicable to section 893.147.
[3] Numerous subsequent district court opinions, including Camp v. State, 293 So.2d 114 (Fla. 4th DCA), cert. denied, 302 So.2d 413 (Fla.1974), and Doby v. State, 352 So.2d 1236 (Fla. 1st DCA 1977), have held that knowledge of the presence of narcotic drugs is an essential element of possession charges. This Court denied certiorari in Camp after Medlin had been decided.

A number of cases involving other simple possession crimes have also held that knowledge of the contraband is part of the crime. Cohen v. State, 125 So.2d 560 (Fla.1960)(statute prohibiting selling of obscene materials impliedly included scienter or knowledge of the character of the matter sold). White v. State, 539 So.2d 577 (Fla. 5th DCA 1989)(the state had the burden of proving that White's possession was conscious and substantial and not merely involuntary or superficial); Wilcox v. State, 522 So.2d 1062 (Fla. 3d DCA 1988)(trial court erred in denying request that the jury be instructed on the knowledge element necessary to convict of the offense of unlawful possession of a firearm by a convicted felon); Jones v. State, 325 So.2d 436 (Fla. 1st DCA 1975)(State must establish that defendant was in knowing and conscious possession of the firearm).
[4] Judge Cowart also authored the opinion in Drain v. State, 601 So.2d 256, 260 (Fla. 5th DCA 1992), wherein the court noted that knowledge of the nature of the substance possessed is an essential implied element of every crime of possession of a controlled substance or imitation controlled substance.
[5] We have omitted the footnotes in the Oxx opinion. However, we would urge the reader to examine the entire opinion in Oxx, including the footnotes, for a scholarly analysis and history of this issue.
[6] While no additional "evil intent" beyond knowledge of the nature of the contraband substance need be established, we believe that "knowledge" to be the equivalent of the "scienter" requirement of the common law. Any attempt to distinguish between the "scienter" requirement associated with the common law concept of mens rea, and the so-called "general knowledge" referred to in Oxx is somewhat strained. However, any straining in Oxx is directly attributable to the prior case law on this issue, including our own, and the subtle distinction between the "evil intent" concept of mens rea and the concept of "guilty knowledge" as reflected in a criminal statute making it unlawful to possess certain contraband. We have generally used "mens rea," "scienter," and "guilty knowledge" loosely and interchangeably in this opinion. Constructively, in effect, the defendant has an "evil intent" under the illegal drug possession statutes if he or she knowingly possesses a prohibited item. That, in fact, is the very "evil" addressed by the statute.
[7] See Drain v. State, 601 So.2d 256, 261-262 (Fla. 5th DCA 1992).
[8] As noted in Oxx, notwithstanding this common law requirement, the legislature has the power to dispense with the element of intent and thereby punish particular acts without regard to the malicious or wrongful mental attitude of the offender. Oxx at 289 n. 2.
[9] See, e.g., Morissette, 342 U.S. at 263-64, 72 S.Ct. at 249-50 (federal codification of common law crimes of theft did not dispense with intent element); Bell v. State, 394 So.2d 979 (Fla.1981) (legislature did not intend to do away with specific intent in defining the crime of robbery), receded from on other grounds, Daniels v. State, 587 So.2d 460 (Fla.1991).
[10] See In re Gorman, 269 Ind. 236, 379 N.E.2d 970 (1978) (holding, in context of attorney discipline action, possession of drugs is crime involving moral turpitude); State v. Hennings, 3 Wash. App. 483, 475 P.2d 926, 930 (1970) (holding that under contemporary community standards and in light of peripheral evils associated with narcotics traffic, possession and sale of narcotics, unless authorized by law, is a crime which by its nature involves moral turpitude and this is categorized as a crime mala in se); see also 28 C.J.S. Drugs and Narcotics, § 209 (Supp.1974) ("In a prosecution for unlawful possession of narcotics or dangerous drugs, the state must prove by sufficient evidence that accused had either actual or constructive possession of the narcotic and that he had knowledge of its presence and of its narcotic character."); 25 Am.Jur.2d Drugs, Narcotics, and Poisons, § 21 (1966) ("[I]t is generally held that the accused must be shown to have been aware of the presence and character of the drug and to have been intentionally and consciously in possession of it."); see generally B. Finberg, Annotation, What Constitutes "Possession" of a Narcotic Drug Proscribed by § 2 of the Uniform Narcotic Drug Act, 91 A.L.R.2d 810, 821-22 (1963); but see State v. Harvey, 275 S.C. 225, 268 S.E.2d 587, 588 (1980) (holding that simple possession of marijuana does not constitute crime of moral turpitude); State v. Hartzog, 26 Wash.App. 576, 615 P.2d 480, 490 (1980) ("Mere possession is malum prohibitum and does not require intent or guilty knowledge."), affirmed in part, reversed in part on unrelated point, 96 Wash.2d 383, 635 P.2d 694 (1981); Finberg, supra, 91 A.L.R.2d at 826-27.
[11] There is also no evidence that the legislature's omission of scienter from its statutory definition of the two possession offenses here make them "strict liability" offenses. See Gartrell v. State, 609 So.2d 112, 118-19 (Fla. 4th DCA 1992) (Farmer, J., dissenting), approved in part, quashed in part, 626 So.2d 1364 (Fla.1993). The legislature, by inserting the word "knowingly," expressly included guilty knowledge as a core ingredient in the drug trafficking offenses. Id. at 114; see § 893.135, Fla. Stat. (1995). In Florida, drug trafficking is a more serious offense than the two statutes in this case. See § 775.082(3)(b), Fla. Stat. (1995). However, this does not mean that the legislature consciously omitted guilty knowledge from the possession crimes because it did not use the word "knowingly" to define them. See Staples, 511 U.S. at 620, 114 S.Ct. at 1805 ("Although the word `knowingly' does not appear in the statute's text, courts generally assume that Congress, absent a contrary indication, means to retain a mens rea requirement.") (Ginsburg, J., concurring); see also Cohen v. State, 125 So.2d 560 (Fla.1960), and cases cited therein.
[12] Further, "[t]he purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution's path to conviction, to strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juries." Morissette, 342 U.S. at 263, 72 S.Ct. at 249. We are reluctant to impute these purposes to the legislature here. See Staples, 511 U.S. at 615-16, 114 S.Ct. at 1802.
[13] The United States Supreme Court, "has on a number of occasions read a state-of-mind component into an offense even when the statutory definition did not in terms so provide." United States v. United States Gypsum Co., 438 U.S. 422, 437, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978); see, e.g., Staples, 511 U.S. at 600, 114 S.Ct. at 1793.
[14] This is an appropriate subject to be addressed by the Committee on Standard Jury Instructions in Criminal Cases. In fact, the current instructions, by a Note to Judge, already suggest that more specific instructions on knowledge or lack of knowledge may be required if the defendant raises the issue as to the nature of a particular drug. Further, consistent with Medlin, the present instructions also note the inference of knowledge that may appropriately be drawn in cases of actual possession.