742 So.2d 509 (1999)
STATE of Florida, Appellant,
v.
Robert E. WILLIAMS, Appellee.
No. 98-2055.
District Court of Appeal of Florida, First District.
October 15, 1999.
*510 Robert A. Butterworth, Attorney General; and Laura Fullerton Lopez, Assistant Attorney General, Tallahassee, for Appellant.
William R. Wade, Milton, for Appellee.
BROWNING, J.
The State of Florida appeals the trial court's ruling granting a motion for judgment of acquittal after a jury verdict finding Robert E. Williams guilty of possession of cocaine. We have jurisdiction. § 924.07(1)(j), Fla. Stat. (1997); Fla. R.App. P. 9.140(c)(1)(E). Our review of the record indicates that the State presented sufficient evidence of actual possession to support the jury's determination of guilt. Therefore, we reverse the order granting the judgment of acquittal and remand with instructions to reinstate the jury's verdict.
The State charged Williams with unlawfully and knowingly being in actual or constructive possession of a controlled substance (cocaine) (Count One), and unlawful use or possession with intent to use drug paraphernalia (a pipe) (Count Two), on or about February 20, 1998. The case proceeded to trial on Count One only.[1] At the end of the State's case, the defense moved for judgment of acquittal on the ground that the State had not proved Williams' dominion and control of the contraband in a jointly occupied vehicle. The State argued that a jury question was presented on the issues of actual and/or constructive possession. The trial court took the motion under advisement, and the jury found Williams guilty. After the verdict, the motion for judgment of acquittal was revisited, and the trial court found that the State had not proved Williams' guilty knowledge *511 of the contraband. The court issued an order granting the motion for judgment of acquittal and ordered Williams' release from custody.
As the appellant, the State carries the burden of demonstrating to this court that the trial court prejudicially erred. § 924.051(7), Fla. Stat. (1997). A motion for judgment of acquittal is designed to challenge the legal sufficiency of the evidence. If the State has presented competent evidence to establish every element of the crime, then a judgment of acquittal is improper. Peacock v. State, 498 So.2d 545 (Fla. 1st DCA 1986). The following rule is well-settled:
Generally, on a motion for judgment of acquittal, the court should not grant the motion unless, when viewed in a light most favorable to the state, the evidence does not establish the prima facie case of guilt.
Dupree v. State, 705 So.2d 90, 93 (Fla. 4th DCA 1998) (en banc); Proko v. State, 566 So.2d 918 (Fla. 5th DCA 1990). Likewise:
A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.
Lynch v. State, 293 So.2d 44, 45 (Fla.1974); Boyce v. State, 638 So.2d 98 (Fla. 4th DCA 1994). The Supreme Court of Florida has set out the trial court's duty as follows:
It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences.
State v. Law, 559 So.2d 187, 189 (Fla.1989); Spinkellink v. State, 313 So.2d 666 (Fla. 1975). We have de novo review of the record to determine whether sufficient evidence supports the jury's verdict. See State v. Eversley, 706 So.2d 1363, 1364 (Fla. 2d DCA 1998) (trial court erred in granting motion for judgment of acquittal where sufficient evidence in record supported jury's guilty verdict); State v. Powell, 636 So.2d 138 (Fla. 1st DCA 1994) (finding competent substantial evidence in the record to support the jury's guilty verdict, this court reversed order granting motion for judgment of acquittal).
The motion for judgment of acquittal alleged the State's failure to present a prima facie case of possession of crack cocaine. To prove possession, the State was required to show that Williams possessed a certain substance, that the substance was cocaine, and that he had knowledge of the presence of the substance. Chicone v. State, 684 So.2d 736, 745 (Fla.1996). Possession can be actual or constructive. "Actual possession" exists where a defendant has physical possession of contraband and knowledge of such possession. Gartrell v. State, 626 So.2d 1364 (Fla.1993) (defendant, a back-seat passenger, was in exclusive physical possession of cocaine that was found in a side pocket in her purse, which she had used as a head rest or pillow, so that knowledge of the contraband could be presumed); Jean v. State, 638 So.2d 995, 996 (Fla. 4th DCA 1994); Hively v. State, 336 So.2d 127 (Fla. 4th DCA 1976). The standard instructions, which were read to the jury, provide that if something "is in the hand of or on the person," or is "in a container in the hand of or on the person," or "is so close as to be within ready reach and is under the control of the person," it is in that person's actual possession. Fla. Std. Jury Instr. (Crim.) 300 (July 1997); Chicone, 684 So.2d at 745.
"Constructive possession" exists where a defendant does not have actual physical possession of contraband but knows of its presence on or about his premises and has the ability to exercise and maintain control over the contraband. Brown v. State, 428 So.2d 250 (Fla.1983); Wilcox v. State, 522 So.2d 1062 (Fla. 3d DCA 1988). To show constructive possession, the State must demonstrate that the defendant exercised dominion and control *512 over the contraband, had knowledge of the presence of the contraband, and had knowledge of the illicit nature of the substance. Brown, 428 So.2d at 250; Hill v. State, 736 So.2d 133 (Fla. 1st DCA 1999); Farmer v. State, 588 So.2d 1051 (Fla. 1st DCA 1991). Knowledge of possession may be presumed or inferred where the State offers evidence of actual possession or exclusive constructive possession. Chicone, 684 So.2d at 739-40; Gartrell, 626 So.2d at 1366; State v. Medlin, 273 So.2d 394 (Fla. 1973); Frank v. State, 199 So.2d 117 (Fla. 1st DCA 1967). The situation is different, however, where constructive possession is non-exclusive. In that instance, possession alone will not support such an inference because mere proximity to contraband, without more, is legally insufficient to prove possession. Chicone, 684 So.2d at 740; Dupree, 705 So.2d at 94; Lopez v. State, 711 So.2d 563 (Fla. 2d DCA 1997).
Having carefully considered the evidence in a light most favorable to the State, we find that the State made a prima facie case of actual possession. Corporal Robbie Whitfield, who was a deputy with the Santa Rosa County Sheriff's Office at the time of the offense, testified that on February 20, 1998, he assisted the narcotics unit in executing a search warrant authorizing a search of the property, the curtilage, the people, and any motor vehicle located at the trailer residence owned by Gary Wisdom at 2225 Janet Street in Navarre. The warrant was served on the residence around 9:30 or 10:00 in the evening. The authorities were looking for crack cocaine, drug paraphernalia, and possible stolen property. Several individuals were found inside the residence. While Whitfield was inside the house, the telephone continued to ring. He answered it and heard an unidentified voice that "sounded like ... a black male" stating "I thought you were gonna [sic] meet me." Whitfield responded: "I'm busy. You'll have to come here." After hanging up the telephone, Whitfield announced: "They're coming over." Sergeant Hank Shirah sent Detective Craig Brinkerhoff and Deputy William Meloy outside to watch covertly for any arriving vehicles.
Brinkerhoff's and Meloy's testimony regarding the ensuing events is consistent in all material respects. Within 8-10 minutes of the telephone call, a two-door, yellow Cadillac drove very slowly past the house, proceeded several hundred yards to the end of the street and turned around, and pulled into the driveway of the residence where the search was occurring. There were no clearly visible marked patrol vehicles on the premises, and someone driving by would not have seen the officers in uniform. Williams, the driver of the car, turned off the lights and left the engine running. As the car approached, Brinkerhoff and Meloy took its three black male occupants by surprise. Pointing their flashlights, Meloy tapped on the driver's window and asked Williams to shut off the motor as Brinkerhoff approached the front passenger's side of the vehicle. The occupants were ordered to raise their hands with palms open, to keep them in plain sight, and to exit the car. At least two officers could see the occupants at all times. Brinkerhoff testified that from the time he first observed them, the occupants of the car did not have time to move any objects inside the vehicle. For safety's sake, Brinkerhoff was watching the men's hands, and he never saw either Williams or the passengers carry anything, close their palms, or make any furtive movements. The three occupants kept relatively still after the authorities appeared; Meloy did not observe any quick or furtive movements. After Williams shut off the engine, he put both hands out the door and rolled face down onto the ground. Williams was cooperative as Meloy performed a patdown, which disclosed no contraband on his person.
After the three men were removed from the car, Brinkerhoff leaned inside the front passenger's side of the car and aimed his flashlight to make sure there were no *513 weapons or hidden passengers inside the vehicle. Seeing what appeared to be a clear baggy containing hard chunks of crack cocaine by the driver's seat, Brinkerhoff notified Detective Larry Owens, a narcotics officer, who gathered it as evidence. Meloy testified that within one minute after the stop, he heard Brinkerhoff refer to the "crack" that he had found. Meloy observed Brinkerhoff pointing his flashlight at something tucked in plain view where the seat belt attachment connects to the right side of the driver's seat, i.e., between the buckle (into which the seat belt snaps) and the center, fold-down arm rest. The interior of the vehicle was dark blue or black, whereas the contraband was contrasting white. Although Williams was driving the vehicle, it was registered in the name of someone else, in Okaloosa County. Williams claimed not to recall the name of the owner, whom he described to an officer as "some white guy" from Pensacola from whom he had borrowed it. Initially, Williams indicated they had not come from Pensacola, but later he said they had done so. Neither the two passengers in the Cadillac nor its white male owner was arrested, and the vehicle eventually was returned to the owner.
The baggy contained a large amount of crack cocaine, estimated to have a street value between $1,500 and $3,000, or about $100 per gram. After acknowledging that he understood his Miranda[2] rights, Williams indicated his willingness to talk to the authorities. He claimed that the crack was not his, and he purported not to know which of the other occupants was the owner. The occupants of the vehicle basically pointed the finger at one another regarding the ownership of the crack. No fingerprints of any value were lifted from the baggy, a not uncommon situation according to the fingerprint analyst.
The location of the baggy is sufficient to establish Williams' actual personal possession of the contraband. Medlin, 273 So.2d at 396; Thomas v. State, 512 So.2d 1099 (Fla. 5th DCA 1987). Crack cocaine has a distinctive look, and the white, chunky substance could be easily seen in the clear baggy, which was in open view upon the contrasting darker seat. Cf. Smith v. State, 687 So.2d 875 (Fla. 2d DCA 1997) (reversing conviction for carrying concealed firearm, where loaded .357 Ruger and ammunition were wedged down 7-8 inches between driver's bucket seat and center console, unloaded shotgun or rifle containing ammunition in storage compartment was under luggage on floor behind defendant/front passenger's seat, and guns bore no fingerprints and were not visible from defendant's seat). While occupying the driver's seat, Williams had to have been sitting upon or directly against the baggy when the authorities stopped him. That is, he was right next to it, if not actually touching it, and readily could have reached it with the slightest movement of his arm. Cf. Williams v. State, 724 So.2d 1214 (Fla. 4th DCA 1998) (reversing conviction for possession of firearm by convicted felon, where car driven by defendant and occupied by two other passengers struck something during a police chase, occupants all fled the vehicle, and police found firearm on driver's bucket seat).
Williams' contention that someone else could have placed the baggy in his seat after he exited the car is rebutted by the fact that the three occupants were closely observed by law-enforcement officers at all times after the surprise encounter. Brinkerhoff and Meloy testified that the occupants were immediately ordered to hold up their hands in plain view and that nobody had the time or the opportunity to move or drop anything inside the car. Nobody but Williams was occupying the driver's seat, immediately beside which the plainly visible baggy was found. A center arm rest separated Williams' seat from the front passenger's seat. Thus, the space immediately underneath or beside his body, where the contraband was found, was within his *514 ready reach and exclusive personal control and access for purposes of the jury instruction on actual possession. Cf. T.W. v. State, 666 So.2d 1001 (Fla. 5th DCA 1996); In Interest of E.H., 579 So.2d 364 (Fla. 4th DCA 1991) (reversing adjudication of delinquency for possession of cocaine, where juvenile driver of vehicle with a passenger claimed not to know about rock of cocaine located between driver's seat and middle transmission tunnel and hidden from plain view). As the supreme court noted in State v. Allen, 335 So.2d 823 (Fla.1976):
Circumstantial evidence, by its very nature, is not free from alternate interpretations. The state is not obligated to rebut conclusively every possible variation, however, or to explain every possible construction in a way which is consistent only with the allegations against the defendant. Were those requirements placed on the state for these purposes, circumstantial evidence would always be inadequate to establish a preliminary showing of the necessary elements of a crime.
Id. at 826; Toole v. State, 472 So.2d 1174 (Fla.1985). Williams' knowledge of the presence of the contraband can be inferred under these circumstances. Medlin, 273 So.2d at 396. Given the totality of the circumstances, the trial court properly sent the case to the jury. Gartrell, 626 So.2d at 1366; Hampton v. State, 680 So.2d 581 (Fla. 3d DCA 1996). The jury heard competent substantial evidence from which it reasonably could have concluded that Williams had actual possession of the crack cocaine. Under these particular facts, the jury's verdict should stand. Accordingly, we REVERSE the order granting the judgment of acquittal and REMAND WITH INSTRUCTIONS TO REINSTATE the jury's verdict.
WOLF and DAVIS, JJ., CONCUR.
NOTES
[1] The State voluntarily dismissed Count Two.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).