**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Gideon ASAMOAH, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 12, 2001.

Filed Feb. 21, 2002.

918

Stephen D. Fugett, Public Defender, York, for appellant.

Brian R. Sinnett, Asst. Dist. Atty., York, for Com., appellee.

Before: CAVANAUGH, STEVENS, and BECK, JJ.

CAVANAUGH, J.

¶ 1 This is an appeal from judgment of sentence imposed after appellant was found guilty of delivery of a noncontrolled substance, in violation of 35 P.S. § 780–113(a)(35)(ii). Appellant sold soap to undercover police officers and represented it to be crack cocaine. On appeal he argues that the evidence requires acquittal since he proved the defense at § 780–113(a)(35)(v)(D). We disagree and affirm.

¶ 2 The record certified on appeal, from the non-jury trial on stipulated facts, establishes that on June 10, 2000, at 3:25 in the morning, two officers with the York City police force were working undercover in a taxicab posing as drug buyers. The appellant walked up to the cab and one officer asked him if he "got anything." The appellant answered in the affirmative and got into the back of the cab. Appellant reached into his pocket and pulled out a corner of a plastic baggie. Inside the baggie was a little chunk of off-white substance that appeared to be crack cocaine. The appellant gave the baggie corner to the officer and the officer handed appellant a $20 bill. The appellant stated, "that's a nice 20 rock there." When the officer driving stopped the cab, appellant got out and ran. The other officer chased him,

caught him, and retrieved the $20 bill that he had paid to appellant.

¶ 3 It was further stipulated that the arresting officer would testify that in his experience as a police officer, he has seen crack cocaine packaged in similar baggie corners, that the substance itself was similar in appearance to crack cocaine, and that the price charged for it, $20, was an approximation of the amount that a $20 rock of crack cocaine would be.

¶ 4 There is no dispute that the substance sold to the officers by appellant was soap and that a piece of soap the size that was sold would not sell for $20.00.

¶ 5 Appellant was found guilty of the following statutory offense:

Except as otherwise provided by law, no person shall knowingly distribute or sell a noncontrolled substance upon the express or implied representation that the substance is a controlled substance. In determining whether there has been a violation of this subclause, the following factors shall be considered:

(A) Whether the noncontrolled substance in its overall finished dosage appearance is substantially similar in size, shape, color and markings or lack thereof to a specific controlled substance.

(B) Whether the noncontrolled substance in its finished dosage form is packaged in a container which, or the labeling of which, bears markings or printed material substantially similar to that accompanying or containing a specific controlled substance.

(C) Whether the noncontrolled substance is packaged in a manner ordinarily used for the illegal delivery of a controlled substance.

(D) Whether the consideration tendered in exchange for the noncontrolled substance substantially exceeds the reasonable value of the substance, consider-

ing the actual chemical composition of the substance and, where applicable, the price at which over-the-counter substance of like chemical composition sell.

(E) Whether the consideration tendered in exchange for the noncontrolled substance approximates or exceeds the price at which the substance would sell upon illegal delivery were it actually the specific controlled substance it physically resembles.

35 P.S. § 780–113(a)(35)(ii), (A)—(E).

¶ 6 Given the evidence stipulated to at trial, and given the lack of contention otherwise on appeal, we find that the Commonwealth made out a *prima facie* case of delivery of a noncontrolled substance. The overall finished dosage appearance of the soap that was sold was substantially similar in size, shape, and color to crack cocaine. The packaging of the soap was substantially similar to that of crack cocaine, and the $20 paid was the price of a rock of cocaine and not of a piece of soap. These elements are sufficient to prove a *prima facie* case. *See Commonwealth v. Dancy,* 437 Pa.Super. 462, 650 A.2d 448 (1994). However, there exists a defense upon which appellant challenges his conviction, for which he bears the burden of proof, § 780–121.

¶ 7 Section 780–113(a)(35)(v) provides in relevant part:

The provisions of this clause shall not be applicable to:

(D) A noncontrolled substance that was initially introduced into commerce prior to the initial introduction into commerce of the controlled substance which it is alleged to imitate.

¶ 8 Appellant argues that he has established this defense since soap was initially introduced into commerce prior to the ini-

tial introduction into commerce of cocaine. The lower court reasoned that 1) as an illegal drug, cocaine never was introduced into commerce, and 2) the particular manner in which the soap was packaged was introduced into commerce subsequent to the initial illicit sale of crack cocaine. Therefore, the court concluded that the defense was not proven by appellant.

¶ 9 Respectfully, we disagree with the learned trial judge as we believe that recent experience in our society clearly demonstrates that there is substantial commerce in cocaine and that the law does not limit goods in "commerce" to those which are legally available in the marketplace. Rather, when we review the laws governing distribution of noncontrolled substances and the limited legislative background available, we find that there was an intention to render illegal the distribution of "look alike" products which imitated common drugs and which carried with them special user risks separate from the drug they seek to imitate.

¶ 10 Having rendered distribution of imitative noncontrolled products illicit, it became necessary to protect those who are legally involved in the usage of such products. Accordingly, 35 P.S. § 780–113(a)(35)(v) immunized from prosecution: 1) law enforcement officers in their legitimate activities; 2) processors of placebos for accepted usages; 3) medical and pharmaceutical professionals who dispense products covered by # 2; and 4) a noncontrolled substance that was initially introduced into commerce prior to the controlled substance which it is claimed to imitate. Although the legitimate interest which this category seeks to protect is

more difficult to discern, it would appear to apply instantly if soap were commonly marketed as small hunks packaged in small baggie corners. It could then be claimed that the present transaction involved only the distribution by sale of a commonly sized and packaged piece of soap. Of course, since there is no such extraordinary product known to the marketplace, this defense is unavailable to the appellant.[1]

¶ 11 On appeal, the Commonwealth argues that appellant was required to prove that the particular type of soap sold met the chemical composition of a "noncontrolled" substance. We find that since appellant was convicted of selling a noncontrolled substance, the Commonwealth is estopped from challenging on appeal the fact that the soap sold by appellant was a noncontrolled substance for purposes of both § 780–113(a)(35)(ii) and § 780–113(a)(35)(v)(D).

¶ 12 In applying the provisions of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101 *et seq.*, we read the various sections *in pari materia* with one another. *Commonwealth v. Irby*, 700 A.2d 463 (Pa.Super.1997). We will not interpret one section so as to render meaningless and impossible of execution a different section. *Id.* at 465. We find that acceptance of appellant's position would render meaningless, under the circumstances of this case, the intent of the legislature to forbid the sale or distribution of a noncontrolled substance on the representation that it was a controlled substance.

---

1. By conjecture, if a controlled substance was commonly distributed in the form of little red heart-shaped pills, the defense would seem to be available to the manufacturer of little red heart-shaped candies.

¶ 13 Without specific proof by an accused that the actual substance which he falsely represented to be a controlled substance was initially introduced into commerce before the introduction of the controlled substance, the intent of the legislature to prohibit the sale of bogus controlled substances would be thwarted. Given the malleability of raw materials to be formed into various shapes and textures, particularly those made to resemble crack cocaine such as soap and wax, we interpret the phrase "noncontrolled substance" as used in subsection 35 to refer to the precise form of a substance not to its more general description as used in common parlance. In order to sustain his burden under § 35(v)(D), an accused must demonstrate that the particular form of the substance sold by him had been in commerce before the actual controlled substance.

¶ 14 We decline to follow the language in *Drain v. State,* 601 So.2d 256 (Fla.App. 1992), cited by appellant, which would support a contrary position. Absent a showing that the imitative form of the substance sold by an accused pre-dated the controlled substance in its initiation into commerce, there has not been established the defense contained at § 780–113(a)(35)(v)(D).

¶ 15 Judgment of sentence affirmed.