842 So.2d 46 (2002)
Ronald REYNOLDS, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-1114.
Supreme Court of Florida.
December 19, 2002.
Rehearing Denied March 26, 2003.
Nancy A. Daniels, Public Defender, and Kathleen Stover, Assistant Public Defender, *47 Second Judicial Circuit, Tallahassee, FL, for Petitioner.
Richard E. Doran, Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Daniel A. David, Assistant Attorney General, Tallahassee, FL, for Respondent.
ANSTEAD, C.J.
We have for review Reynolds v. State, 784 So.2d 509 (Fla. 1st DCA 2001), based on express and direct conflict with State v. Simbach, 742 So.2d 365 (Fla. 2d DCA 1999). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We conclude that section 828.12(2), Florida Statutes (1997), prohibiting cruelty to animals, constitutes a general intent crime, and we approve the First District Court of Appeal's decision in Reynolds rejecting the petitioner's due process attack on the statute and affirming his conviction.

BACKGROUND
Petitioner, Ronald Reynolds, was convicted of felony animal cruelty pursuant to section 828.12(2), Florida Statutes (1997), which provides:
A person who intentionally commits an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes the same to be done, is guilty of a felony of the third degree, punishable as provided in s. 775.082 or by a fine of not more than $10,000, or both.
On appeal from his conviction to the First District Court of Appeal, petitioner asserted that section 828.12(2) should be construed to require a specific intent, or, if not, should be found facially unconstitutional because it did not include a specific intent element. Reynolds v. State, 784 So.2d 509, 510 (Fla. 1st DCA 2001).
The district court rejected petitioner's assertions, and concluded first that the plain language of section 828.12(2) did not require specific intent, or in other words, the statute did not require the defendant to "commit an act intending to cause a cruel death or excessive or repeated unnecessary pain or suffering." Id. Judge Webster, writing for the court, explained:
As appellant correctly notes, the clear language of the statute requires only that one "intentionally commit[] an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering" to be guilty of the offense. It does not require that one commit an act intending to cause a cruel death or excessive or repeated unnecessary pain or suffering. Historically, the former has been called a "general intent" crime, and the latter has been called a "specific intent" crime.
Id. at 511.
Further, in determining that specific intent was not constitutionally required, Judge Webster explained:
The fact that section 828.12(2), Florida Statutes (1997), requires only general, rather than specific, intent does not, as appellant argues, necessitate the conclusion that the statute is unconstitutional. (We note that appellant fails to identify any particular provisions of either the state or the federal constitution that are supposedly violated by this statute.) Our supreme court has held:
It is within the power of the legislature to declare conduct criminal without requiring specific criminal intent to achieve a certain result; that is, the legislature may punish conduct without regard to the mental attitude of the offender, so that the general intent of the accused to do the act is deemed to give rise to a presumption *48 of intent to achieve the criminal result....
The question of whether conviction of a crime should require proof of a specific, as opposed to a general, criminal intent is a matter for the legislature to determine in defining the crime. The elements of a crime are derived from the statutory definition.

State v. Gray, 435 So.2d 816, 819-20 (Fla.1983). The legislature has, by plain language, declared that one is guilty of the crime proscribed by section 828.12(2) regardless of whether he or she acted with the specific intent to inflict upon an animal a cruel death or excessive or repeated unnecessary pain or suffering.
Id. The district court affirmed the conviction and held that (1) section 828.12(2) only required general intent, and (2) the lack of a specific intent element in section 828.12(2) did not render the statute facially unconstitutional. Id. at 510.

Simbach
In contrast to the First District's decision, the Second District in State v. Simbach, 742 So.2d 365 (Fla. 2d DCA 1999), held that section 812.12(2) did require proof of a specific intent of cruelty. In Simbach, the trial court granted defendant's motion to dismiss felony animal cruelty charges under section 828.12 "because [the defendant] did not intend for the animal to endure a cruel death or any unnecessary pain or suffering." Simbach, 742 So.2d at 366. In a brief analysis, the Second District concluded, "We agree with the trial court's interpretation of section 828.12 as requiring a specific intent to cause a cruel death or excessive or repeated infliction of unnecessary pain or suffering." Id.

ANALYSIS
The conflict between the Simbach and Reynolds decisions is whether section 828.12(2) requires that an alleged offender have a specific intent to bring about a cruel death or unnecessary pain and suffering of an animal.[1] We agree with Judge Webster's conclusion in Reynolds that the Legislature, by the plain language of the statute, intended for section 828.12(2) to operate as a general intent crime.
Relying on State v. Huggins, 802 So.2d 276 (Fla.2001), petitioner argues that the word "intentionally" as used in section 828.12(2) should modify the rest of the phrase as well, such that a person would not be criminally liable unless the person actually intended a "cruel death, or excessive or repeated infliction of unnecessary pain or suffering." Petitioner's reliance on Huggins, however, is misplaced, because the statutory phrase at issue in Huggins is entirely distinguishable. In Huggins, we interpreted the language in the Prison Releasee Reoffender Act, which defined a prison releasee reoffender as a defendant who "commits, or attempts to commit" a "burglary of an occupied structure or dwelling." See id. at 277-78 (interpreting language of section 775.082(8)(a)(1)(q), Fla. Stat. (1997)). We determined that the term "occupied" in the phrase "occupied structure or dwelling" modified both the term "structure" and "dwelling." We likened the phrase "occupied structure or dwelling" to other short phrases where an adjective modifies a subsequent list of nouns:
Phrases constructed like the phrase at issue, however, are commonly construed *49 to mean that the adjective modifies subsequent nouns, for example, "qualified man or woman" and "governmental fine or penalty" mean "qualified man or qualified woman" and "governmental fine or governmental penalty, respectively."
Id. at 278. However, the phrase in section 828.12(2) is unlike the phrase in Huggins because it does not involve an adjective immediately followed by a list of nouns.[2] Hence, we find Huggins inapposite.

INTENT
The Legislature generally has broad authority to determine any requirement for intent in the definition of a crime. The Legislature is vested with the authority to define the elements of a crime, and therefore "determining whether scienter is an essential element of a statutory crime is a question of legislative intent." Chicone v. State, 684 So.2d 736, 741 (Fla.1996). Further, it is well settled that legislative intent is the polestar that guides a court's statutory construction analysis. See State v. Rife, 789 So.2d 288, 292 (Fla.2001); McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998). In determining the Legislature's intent, we look first at the statute's plain language. See, e.g., Hawkins v. Ford Motor Co., 748 So.2d 993, 997 (Fla.1999); Moonlit Waters Apartments, Inc. v. Cauley, 666 So.2d 898, 900 (Fla.1996).
Section 828.12(2) plainly states: "A person who intentionally commits an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes the same to be done, is guilty of a felony of the third degree ...." § 828.12(2) (emphasis added). The meaning of the language that the Legislature selected to describe any required intent in this statute is both plain and unambiguous. Moreover, from a common sense reading of the statute, it is clear that the First District's interpretation is correct. The language of the statute expressly requires only that the defendant "intentionally commit an act," with the word "intentionally" modifying the phrase "commit an act." Hence, the Legislature has expressed no intent to create an additional element requiring proof that an alleged offender acted with the mental intent to inflict a cruel death or unnecessary suffering.
Furthermore, if the Legislature wanted the statute to include the specific intent to cause a cruel death or suffering, they could have specifically said so. Notably, section 828.12(2) previously provided:
A person who tortures any animal with intent to inflict intense pain, serious physical injury, or death upon the animal is guilty of a felony of the third degree, punishable as provided in s. 775.082 or by a fine of not more than $10,000, or both.
§ 828.12(2), Fla. Stat. (1993) (emphasis added). This version of the statute did provide for specific intent to inflict pain, injury, or death. Thus, the Legislature clearly knew how to draft the statute so that the act would not be criminal unless the defendant had acted with the specific intent to inflict intense pain, serious physical injury, or death upon an animal. In 1994, however, the Legislature amended the statute to read in its present form. *50 See ch. 94-339, § 5, at 2436, Laws of Fla.[3] As amended, the statute no longer requires that a person act with the specific intent to inflict intense pain or death. Rather, the statute simply requires that the person "intentionally commit[] an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes the same to be done." Id. (emphasis added). See also § 828.12(2), Fla. Stat. (1997).
Reynolds further contends that we should imply a requirement of specific intent under the reasoning of our opinion in Chicone v. State, 684 So.2d 736, 737-38 (Fla.1996), wherein we examined section 893.13(1)(f), Florida Statutes (1991) (possession of controlled substance), and section 893.147(1), Florida Statutes (1995) (possession of drug paraphernalia). However, in Chicone, both statutes were silent as to whether a scienter element was required, i.e., that knowledge of the presence of illicit drugs or paraphernalia was a necessary element of either crime. Under those circumstances, and based on the nature of the offenses, we held that the Legislature intended guilty knowledge associated with the possession to be an element of both crimes and that the State must prove that a person in possession of the illicit items knew that they were in his or her possession. See 684 So.2d at 744.
In particular, we noted:
The United States Supreme Court has stated that offenses that require no mens rea generally are disfavored, and has suggested that some indication of legislative intent, express or implied, is required to dispense with mens rea as an element of a crime. There is no such indication of legislative intent to dispense with mens rea here. Our holding depends substantially on our view that if the legislature had intended to make criminals out of people who were wholly ignorant of the offending characteristics of items in their possession, and subject them to lengthy prison terms, it would have spoken more clearly to that effect. Interpreting the statutes as dispensing with scienter would "criminalize a broad range of apparently innocent conduct...."
... We believe it was the intent of the legislature to prohibit the knowing possession of illicit items and to prevent persons from doing so by attaching a substantial criminal penalty to such conduct.... As all agree, including the State, the legislature would not ordinarily criminalize the innocent possession of illegal drugs. *51 Id. at 743-44 (footnote and citations omitted). Thus, our holding in Chicone was based on our view that the Legislature would not "make criminals out of people who were wholly ignorant of the offending characteristics of items in their possession, and subject them to lengthy prison terms" without explicitly stating this intent. Id. at 743.
However, as noted above, Chicone involved statutes that were silent as to the requisite intent. In the instant case, there is an intent expressly provided for in the statute. A person must "intentionally commit[] an act" that results in an animal's cruel death or causes an animal an excessive amount of suffering. § 828.12(2), Fla. Stat. (1997). Thus, unlike the situation in Chicone, here the Legislature was not silent on the subject of intent in drafting section 828.12(2).
Finally, petitioner argues that even if section 828.12(2) is "written in language which sounds like it requires only general intent," we must, nonetheless, read specific intent into the statute for it to be constitutional.[4] Petitioner's argument is general in nature, but apparently predicated on due process concerns of notice. We have previously stated that "[i]t is within the authority of the legislature to dispense with specific criminal intent when defining crimes." State v. Bussey, 463 So.2d 1141, 1143 (Fla.1985); see State v. Gray, 435 So.2d 816, 819-820 (Fla.1983). Here, the Legislature has acted within that authority and has put potential offenders on express notice of the intent required to violate section 828.12(2). That the statute contains a requirement of a general intent to commit an act that is obviously reasonably related to the harm sought to be avoided, rather than a more specific intent, is a choice for the Legislature. Therefore, we conclude the lack of a provision requiring specific intent to inflict pain does not render the statute unconstitutional.

CONCLUSION
Based on the plain language of the statute, we hold that the First District was correct in its analysis and conclusion both as to intent requirements of section 828.12(2), Florida Statutes (1997), and the statute's constitutionality. We approve *52 Reynolds and disapprove Simbach to the extent that it holds that section 828.12(2) requires specific intent.[5]
It is so ordered.
SHAW, WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., concur.
NOTES
[1] See also Craig I. Scheiner, Crimes Against Nonhuman Animals and Florida's Courts 1889-2001, Fla. B. J., Nov. 2001, at 52, 53 (explaining the conflict between Reynolds and Simbach).
[2] Petitioner suggests that we read the statute as "[a] person who intentionally commits an act to any animal which [intentionally] results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering." However, not only would this result in the insertion of a word that is not present, it would also change the meaning of the statute. When construing statutes, courts "are not at liberty to add words to statutes that were not placed there by the Legislature." See Hayes v. State, 750 So.2d 1, 4 (Fla.1999).
[3] Section 828.12 was amended as follows:

(1) A person who unnecessarily overloads, overdrives, torments, deprives of necessary sustenance or shelter, or unnecessarily or cruelly beats, mutilates, or kills any animal, or causes the same to be done, or carries in or upon any vehicle, or otherwise, any animal in a cruel or inhumane manner, is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or by a fine of not more than $5,000, or both.
(2)A person who intentionally commits an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes the same to be done, A person who tortures any animal with intent to inflict intense pain, serious physical injury, or death upon the animal is guilty of a felony of the third degree, punishable as provided in s. 775.082 or by a fine of not more than $10,000, or both.
(3)A veterinarian licensed to practice in the state shall be held harmless from either criminal or civil liability for any decisions made or services rendered under the provisions of this section. Such a veterinarian is, therefore, under this subsection, immune from a lawsuit for his part in an investigation of cruelty to animals.
Ch. 94-339, § 5, at 2436, Laws of Fla.
[4] Petitioner argues that the law requires a specific intent element because "Florida has no general prohibition against killing an animal" and he describes a host of situations where people who have legally killed an animal would allegedly be held criminally liable, such as hunters, fishers, pest control workers, slaughterhouse workers, and animal shelter employees. This argument is without merit for two reasons. First, there is a general prohibition against unnecessarily killing an animal in Florida. Section 828.12(1), Florida Statutes (1997), provides that a person who "unnecessarily mutilates, or kills any animal... is guilty of a misdemeanor of the first degree." Therefore, unnecessarily killing an animal in Florida is, at a minimum, a punishable misdemeanor.

Moreover, we have already held that the type of concerns petitioner raises are more appropriately addressed to the Legislature. See Wilkerson v. State, 401 So.2d 1110, 1112 (Fla.1981) ("Appellant has raised some difficult questions concerning the applicability of this statute [section 828.12] to hunters, fishermen, and pest exterminators. We believe that these hypothetical questions are more properly addressed to the legislature than to the courts.") Furthermore, as one commentator has noted, anti-cruelty statutes
are intended to protect animals from the kinds of behavior that no responsible hunter or farmer would defend.... Unless society deems these practices unacceptable, anti-cruelty laws will not prevent animals from being hunted, raised and killed for food, used in entertainment, or used in research laboratories. Prosecution of animal cruelty cases is at the discretion of the prosecutor and is usually reserved for extreme cases.
Pamela D. Frasch et al., State Animal Anti-Cruelty Statutes: An Overview, 5 Animal L. 69, 75-76 (1999).
[5] Petitioner raises two additional arguments that we decline to address because they are beyond the scope of the conflict in this case and they were not reached by the decision below.