839 So.2d 798 (2003)
Kimberly S. SULT, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-5013.
District Court of Appeal of Florida, Second District.
February 28, 2003.
*801 Patrick B. Calcutt and Kathleen M. Calcutt of Calcutt & Calcutt, St. Petersburg, and John H. Trevena, Largo, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
GREEN, OLIVER L., Senior Judge.
On a certified question from the county court as a matter of great public importance, this court accepted jurisdiction pursuant to Florida Rules of Appellate Procedure 9.030(b)(4) and 9.160. A jury found Kimberly Sult guilty for a violation of section 843.085, Florida Statutes (2001), "Unlawful use of police badges or other indicia of authority." The trial court withheld adjudication and imposed $300 in costs. In upholding the constitutionality of the statute, the trial court certified the following question:
IS [SECTION] 843.085 VIOLATIVE OF THE CONSTITUTION OF THE UNITED STATES AND OF THE STATE OF FLORIDA IN THAT IT CRIMINALIZES WHAT COULD BE INNOCENT CONDUCT, SPECIFICALLY THE WEARING OF PARAPHERNALIA THAT CAN BE PURCHASED THROUGH COMMERCIAL CHANNELS BY THE PUBLIC AND COULD BE MISCONSTRUED AS INDICIA OF AUTHORITY?
The trial court's certified question appears to raise the issue of substantive due process. Sult challenges the statute on the grounds of overbreadth, vagueness, and substantive due process. She also raises three other issues which we affirm without discussion. We hold that section 843.085 is not overbroad or vague and that it does not violate the right to substantive due process; in turn, we certify a question of great public importance to the Florida Supreme Court.
On June 14, 2001, at approximately 9:15 p.m., Corporal Jerry Davis of the Pinellas County Sheriff's Office noticed Sult entering a convenience store in St. Petersburg. Sult was dressed in a black T-shirt on which was printed a large star and five-inch letters spelling "SHERIFF." The large star depicted a crest and said "Pinellas County Sheriff's Office." At trial, Detective Frank Davis identified the T-shirt Sult had been wearing as an official shirt of the Pinellas County Sheriff's Office and testified that the shirt was used in emergency response situations. Sult was also wearing denim shorts and sandals.
Corporal Davis and Deputy Jeff McConaughey approached Sult, and Corporal Davis asked, "Do you work for us?" Sult replied, "Yes," she opened her wallet, and the officers saw a Pinellas County Sheriff's Office identification card clipped to her wallet. Corporal Davis believed she was in violation of their office policy by wearing only part of a uniform. The officers discovered several minutes later that Sult was not an employee of the sheriff's office, and she was charged with a violation of section 843.085(1). Sult had previously been employed by the Pinellas County Sheriff's Office as a criminal justice specialist and as a detention deputy recruit. When she left her employment with the sheriff's office in October 2000, she did not return her identification card. Sult purchased the T-shirt at Americana Uniforms, a store open to the public. Sult testified that when she purchased the T-shirt she was not in uniform and was not asked for identification.
*802 Section 843.085 provides in relevant part:
843.085 Unlawful use of police badges or other indicia of authority.  It is unlawful for any person:
(1) Unless appointed by the Governor pursuant to chapter 354, authorized by the appropriate agency, or displayed in a closed or mounted case as a collection or exhibit, to wear or display any authorized indicia of authority, including any badge, insignia, emblem, identification card, or uniform, or any colorable imitation thereof, of any federal, state, county, or municipal law enforcement agency, or other criminal justice agency as now or hereafter defined in s. 943.045, which could deceive a reasonable person into believing that such item is authorized by any of the agencies described above for use by the person displaying or wearing it, or which displays in any manner or combination the word or words "police," "patrolman," "agent," "sheriff," "deputy," "trooper," "highway patrol," "Wildlife Officer," "Marine Patrol Officer," "state attorney," "public defender," "marshal," "constable," or "bailiff," which could deceive a reasonable person into believing that such item is authorized by any of the agencies described above for use by the person displaying or wearing it.
....
(4) Nothing in this section shall prohibit a fraternal, benevolent, or labor organization or association, or their chapters or subsidiaries, from using the following words, in any manner or in any combination, if those words appear in the official name of the organization or association: "police," "patrolman," "sheriff," "deputy," "trooper," "highway patrol," "Wildlife Officer," "Marine Patrol Officer," "marshal," "constable," or "bailiff."
(5) Violation of any provision of this section is a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083. This section is cumulative to any law now in force in the state.
The legislature enacted section 843.085 to promote public safety. The legislative history indicates that the intent was to prevent individuals from committing crimes while posing as police officers. See Fla. H.R. Comm. on Crim. Just. CS/HB 457 (1991) Staff Analysis 5 (final May 13, 1991) (on file with Florida State Archives) (commenting that, based on information from the Metro-Dade Police Department, "robberies and kidnappings in which the offenders pose as police officers are occurring with alarming frequency"). With the legislative intent in mind, we turn to the constitutional challenges Sult raises to section 843.085.

OVERBREADTH
Sult contends that the statute is overbroad because it encroaches upon First Amendment rights. In response to this argument, the trial court stated in its order, "The statute is not overbroad as no constitutionally protected guarantees of free speech or free association are affected. See Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940)." Thornhill invalidated a statute which prohibited loitering and picketing and stated that "the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution." Id. at 102. Thornhill does not appear to support the proposition that the First Amendment is not implicated under section 843.085.
Wearing a T-shirt that bears a political message is protected speech. Bd. of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987); see Cohen v. California, 403 *803 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (stating that the defendant's conviction was based entirely upon speech for wearing a jacket that said "Fuck the Draft"). We note, however, that "the right to dress as one pleases, vis-a-vis style and fashion, has little or no first amendment implications." City of Daytona Beach v. Del Percio, 476 So.2d 197, 202 (Fla. 1985). Here, section 843.085 does not prohibit an expression of support for law enforcement. A citizen may wear a shirt that says, for example, "I support the Pinellas County Sheriff's Office" or "Support the Police." It also does not prohibit wearing a shirt that expresses disdain for law enforcement.
Rather, the statute prohibits the wearing or displaying of indicia of authority, or a colorable imitation thereof, of a law enforcement agency that could deceive a reasonable person into believing that the item is authorized by the agency for use by the person displaying or wearing it. The wearing of a shirt that depicts, for example, a star, the word "sheriff," and a crest that says "Pinellas County Sheriff's Office," to the extent that it is expression, is expression of an ambiguous message. Any message that may have been intended is unclear, unlike the expression of the defendant's feelings about the draft in Cohen. Sult's shirt, and other uniform shirts, neither expressly convey support of nor protest against the sheriff's office. It is also possible that a person would wear a uniform shirt because he or she is a member of that law enforcement agency. Thus, we conclude that to wear an official uniform shirt of a law enforcement agency, or a replica of one, implicates only an incidental amount of expressive conduct.
Here, Sult's conduct clearly fell within the prohibitions of section 843.085. She wore an official Pinellas County Sheriff's Office T-shirt to a convenience store, and when asked if she worked for the sheriff's office, she said "yes" and displayed a sheriff's office identification card. An overbreadth analysis, however, is a facial analysis rather than an "as-applied" analysis.
Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face "because it also threatens others not before the court  those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." Bd. of Airport Comm'rs, 482 U.S. at 574, 107 S.Ct. 2568 (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985)). Thus, the purpose of the overbreadth doctrine and its requirement that the court consider hypothetical situations is to eliminate a chilling effect on the exercise of the constitutional right to free speech. See Schmitt v. State, 590 So.2d 404 (Fla.1991). "Restrictions on first amendment rights must be supported by a compelling, governmental interest and must be narrowly drawn to insure that there is no more infringement than is necessary." Firestone v. News-Press Publ'g Co., 538 So.2d 457, 459 (Fla. 1989).
The overbreadth doctrine, however, is to be used sparingly and as a matter of last resort. Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). This is especially so when the challenged statute is "primarily meant to regulate conduct and not merely pure speech." Schmitt, 590 So.2d at 412 (citing Broadrick, 413 U.S. at 615, 93 S.Ct. 2908). The Supreme Court has stated that "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick, 413 U.S. at *804 615, 93 S.Ct. 2908. The Fourth District recognized that "[w]hen a court is confronted with a facial challenge to a law on the ground that it is overbroad, `a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.'" State v. Shank, 795 So.2d 1067, 1070 (Fla. 4th DCA 2001) (quoting City of Houston v. Hill, 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)). A reviewing court must look to whether the overbreadth is substantial because "`there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.'" Bd. of Airport Comm'rs, 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (quoting City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). Individuals who wear, without authorization, full law enforcement uniforms or display law enforcement badges are not entitled to First Amendment protection for their conduct. That conduct merely conveys that the individual is an officer. Any political message on a T-shirt, such as the one Sult wore, is ambiguous and does not send an express message of support for law enforcement. Furthermore, subsection (4) of the statute provides an exemption with reference to fraternal, benevolent, or labor organizations or associations. Thus, a person wearing a Police Benevolent Association shirt, for example, would not be in violation of section 843.085. Also, a T-shirt that expressed clear support for (or protest against) law enforcement, such as "I support the Pinellas County Sheriff's Office," would not violate section 843.085. Therefore, we conclude that section 843.085 affects only incidental expression and is not substantially overbroad.

VAGUENESS
Sult also contends that section 843.085 is unconstitutionally vague. The Florida Supreme Court has explained that "[t]he principles of the vagueness doctrine address compliance with the concept of due process. A statute or ordinance is void for vagueness when, because of its imprecision, it fails to give adequate notice of what conduct is prohibited. Thus, it invites arbitrary and discriminatory enforcement." Wyche v. State, 619 So.2d 231, 236 (Fla.1993) (citations omitted). A statute "is vague if it `either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'"Bouters v. State, 659 So.2d 235, 238 (Fla.1995) (quoting Connolly v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).
The State contends that the analysis should be confined to the facts of this case. "Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); see State v. Barnes, 686 So.2d 633 (Fla. 2d DCA 1996). On an as-applied analysis, it is clear that the statute is not vague. By flashing the sheriff's identification card, Sult showed that she was trying to deceive the officers, and the officers believed that she was an employee of the sheriff's office who had committed a uniform violation.
Because section 843.085 does involve some incidental First Amendment interests, as discussed in the overbreadth analysis, we also note that even on a facial challenge, the statute passes constitutional muster. In Bouters, the court held that the aggravated stalking statute was not vague. In doing so, it analyzed the definition *805 of "harasses" which the statute defined as "to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose." Bouters, 659 So.2d at 238 (quoting § 784.048, Fla. Stat. (Supp.1992)). The Bouters court agreed with the Third District in Pallas v. State, 636 So.2d 1358 (Fla. 3d DCA 1994), approved, 654 So.2d 127 (Fla.1995), that the statute did not create a subjective standard, but a "reasonable person" standard. "[T]he legislature has proscribed willful, malicious, and repeated acts of harassment which are directed at a specific person, which serve no legitimate purpose, and which would cause substantial emotional distress in a reasonable person." Pallas, 636 So.2d at 1361.
In determining that the term "common pocketknife" was not vague, the Florida Supreme Court stated in L.B. v. State, 700 So.2d 370, 372 (Fla.1997):
An analogous situation are those penal statutes which measure conduct by a "reasonable person" standard. See, e.g., [State v.] Manfredonia, 649 So.2d [1388, 1391 (Fla.1995) ] (rejecting a vagueness challenge to a statute imposing a duty upon any adult in control of an open house party to "take reasonable steps" to prevent the possession or consumption of alcohol or drugs by a minor at that party). Like statutes which impose a "reasonable person" standard upon the citizenry, the Legislature's use of the modifier "common" in section 790.001(13), while perhaps not a "model of clarity," see id., does appeal to the norms of the community, which is precisely the gauge by which vagueness is to be judged.
(Footnote omitted.) Thus, even on a facial challenge, the above case law from the Florida Supreme Court supports a conclusion that the reasonable person standard saves section 843.085 from vagueness.

SUBSTANTIVE DUE PROCESS
Finally, Sult contends that section 843.085 violates her right to substantive due process, and the question the trial court certified in essence asks whether the statute violates substantive due process. "The Fourteenth Amendment to the United States Constitution, and article I, section 9 of the Florida Constitution, protect a citizen's right to `due process of law.'" State v. O.C., 748 So.2d 945, 948 (Fla.1999). This court stated the following regarding substantive due process in State v. Walker, 444 So.2d 1137, 1138 (Fla. 2d DCA) (quoting Patch Enters. v. McCall, 447 F.Supp. 1075, 1081 (M.D.Fla.1978)), aff'd, 461 So.2d 108 (Fla.1984):
The basic test of substantive due process is whether the state can justify the infringement of its legislative activity upon personal rights and liberties. So long as the legislative activity does not encroach upon constitutional guarantees, or run afoul of federal statutory law, a state has a broad scope of discretion in which to regulate the conduct of its citizens.
We believe that the incidental effect the statute may have on First Amendment rights does not justify application of the strict scrutiny level of review. Rather, we agree with the trial court's use of the rational basis test in its substantive due process analysis. See Walker, 444 So.2d at 1138-39 (recognizing that under the rational basis test legislation will be upheld if it is reasonably related to a legitimate state interest). The trial court held that section 843.085 did not violate substantive due process but certified the question of whether section 843.085 was unconstitutional for criminalizing innocent conduct, "specifically the wearing of paraphernalia that can be purchased through commercial channels by the public and could be misconstrued as indicia of authority."
*806 A statute can violate substantive due process for arbitrarily criminalizing innocent conduct. See State v. Saiez, 489 So.2d 1125 (Fla.1986) (holding that statute which prohibited possession of machines designed to produce credit cards did not have a rational relationship to goal of preventing credit card fraud because the statute did not require intent to put the equipment to an unlawful use). The legislature does, however, have the authority "to dispense with specific criminal intent when defining crimes." Reynolds v. State, 842 So.2d 46, 51 (Fla.2002) (quoting State v. Bussey, 463 So.2d 1141, 1143 (Fla. 1985)). In Reynolds, the supreme court held that a cruelty to animals statute was a general intent crime, and the statute survived a due process attack.
Under the rational basis test, the State obviously has a legitimate, and even compelling, interest in preventing robberies and kidnappings by individuals posing as law enforcement officers. The statute is rationally related to that goal. Section 843.085(1) is a general intent crime. The defendant need not have the intent to deceive, but the defendant must have the intent to wear or display the items prohibited. The statute may prohibit an individual from wearing a commercially available shirt or hat in public, but the statute is rationally related to its goal because it requires that a reasonable person could be deceived. Therefore, the statute prevents individuals from posing as law enforcement officers and prevents citizens from mistakenly relying on individuals who look like law enforcement officers. We hold that section 843.085(1) is rationally related to a legitimate government interest and thus does not violate substantive due process. We note that even if an intermediate scrutiny test were used because of an incidental effect on speech, we would hold that preventing crimes by persons wearing or displaying law enforcement items is an important governmental objective, and section 843.085 is substantially related to that objective. See T.M. v. State, 784 So.2d 442, 444 n. 1 (Fla.2001) (recognizing an intermediate level of scrutiny in which the governmental objective must be important and the challenged law must be substantially related to that objective).
Thus, we hold that section 843.085 is not overbroad or vague and that it does not violate the right to substantive due process. In doing so, we certify to the Florida Supreme Court the following question of great public importance:
IS SECTION 843.085, FLORIDA STATUTES (2001), UNCONSTITUTIONAL AS OVERBROAD, VAGUE, OR A VIOLATION OF THE RIGHT TO SUBSTANTIVE DUE PROCESS?
Affirmed.
STRINGER and SILBERMAN, JJ., concur.