ALTENBERND, Judge.
 

 The State appeals an order dismissing the information against Evens Morival that charged him with two counts of felony animal cruelty. Mr. Morival owned two dogs that were discovered in his apartment in a severely undernourished and emaciated condition. The State maintains that Mr. Morival intentionally starved the dogs, causing them excessive or unnecessary pain and suffering. Because Mr. Mo-rival failed to satisfy the rather heavy burden on him at the motion to dismiss stage, i.e., that there are no material disputed facts and that the undisputed facts do not establish a prima facie case of guilt against him, we reverse.
 
 See
 
 Fla. R.Crim. P. 3.190(c)(4).
 

 Police arrested Mr. Morival in November 2009 for two counts of animal cruelty. The resulting information merely alleged that Mr. Morival intentionally committed an act, as to each dog, that resulted in excessive or repeated infliction of unneces
 
 *811
 
 sary pain or suffering by failing to provide adequate food, water, or medical treatment in violation of section 828.12(2), Florida Statutes (2009).
 

 Mr. Morival filed a motion to dismiss under Florida Rule of Criminal Procedure 3.190(c)(4). The motion relied on the facts in the Hillsborough County Animal Services (“HCAS”) report, which explained that HCAS workers found the two dogs caged inside Mr. Morival’s apartment, severely undernourished and without food or water. When contacted at work about the condition of his dogs, Mr. Morival explained that he and his roommates were having financial problems. A veterinarian examined the dogs and reported that the male dog was “bright, alert and responsive and was very energetic despite severe muscle wasting and severely inadequate nutrition” and that the female dog “look[ed] to be in fairly good condition despite her lack of nutrition.”
 

 The State filed a traverse that explained that in their deposition testimony, Mr. Mo-rival’s roommates admitted that on the day HCAS workers confiscated the dogs, there was a large bag of dog food in the living room of Mr. Morival’s apartment. The State also attached photographs of the two dogs taken at the time of the arrest, which depict animals that could fairly be described as “skin and bones.” Anyone viewing these photographs could ascertain that these dogs had been underfed for a significant period of time or that they had some serious medical condition that caused them to be extremely emaciated.
 

 Mr. Morival’s motion to dismiss was based on the theory that failure to feed a dog can constitute no more than a misdemeanor. The trial court agreed with his theory and dismissed the information. We review such an order de novo.
 
 See Bell v. State,
 
 835 So.2d 392, 394 (Fla. 2d DCA 2003).
 

 Mr. Morival is correct that section 828.12(1) makes it a misdemeanor to unnecessarily deprive a dog of necessary sustenance.
 
 [1]
 
 Section 828.12(2) makes it a felony to “intentionally [commit] an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering.” The question is whether all undernourishment cases fall within the misdemeanor or whether the State can properly charge the felony in severe cases of undernourishment.
 

 There does not appear to be any case law directly resolving this issue. In
 
 Hynes v. State,
 
 1 So.3d 328 (Fla. 5th DCA 2009), Judge Griffin wrote a special concurrence in a case that affirmed the lower court without a written opinion. She explained:
 

 Despite the trial court’s expressed difficulty with the construction of this statute, the statutory scheme is clear. If a person does the acts described in subsection one, he has committed a misdemeanor. If, however, the person intentionally commits an act which results in a cruel death or in excessive or repeated pain or suffering, a felony is committed. In other words, it is a misdemeanor to fail to feed a dog under the described circumstances; it is a felony to starve a dog to death, or deprive it of sustenance to the point where, like Pepsi, it has no
 
 *812
 
 muscle mass and is too weak even to stand.
 

 Id.
 
 at 830-31.
 

 We are convinced that undernourishment in some factual settings could result in a finding of “cruel death” by a jury. It is admittedly a closer question whether undernourishment could constitute the act of “excessive or repeated infliction of unnecessary pain or suffering” as an offense more severe than “depriv[ing an animal] of necessary sustenance” when the animal survives the abuse.
 
 Compare
 
 § 828.12(2)
 
 with
 
 § 828.12(1).
 

 We conclude that the legislature properly distinguished between cases in which an owner fails, for example, to provide food for a dog for a few days while the owner goes on vacation — which is surely no more than depriving the dog of necessary sustenance — and cases in which an owner does not feed a dog or feeds a dog so little that it suffers malnutrition over an extended period such that the animal loses a high percentage of its normal body weight. There may be alternative theories of this case by which the jury could find that the condition of these dogs was not the result of repeated, long-term failure to feed, but the photographs in the record do not permit this issue to be resolved by a motion to dismiss.
 

 Reversed and remanded.
 

 NORTHCUTT and KELLY, JJ., Concur.
 

 [1]
 

 . Section 828.12(1) provides that
 

 [a] person who unnecessarily overloads, overdrives, torments, deprives of necessary sustenance or shelter, or unnecessarily mutilates, or kills any animal, or causes the same to be done, or carries in or upon any vehicle, or otherwise, any animal in a cruel or inhumane manner, is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or by a fine of not more than $5,000, or both.