[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  11-14878
Non-Argument Calendar

_____

D.C. Docket No. 6:10-cv-00950-JA-KRS

MICHAEL HORN,

Petitioner-Appellant,

versus

SECRETARY, FLA. DEPT. OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 30, 2012)

Before TJOFLAT, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

Michael Horn, who was convicted in Florida of animal cruelty and sentenced

to five years and one day in prison as a habitual felony offender, appeals the denial

of his petition for a writ of habeas corpus.  The district court granted a certificate of appealability on a single claim – whether Mr. Horn's trial counsel rendered ineffective assistance by failing to object to the inclusion of an extraneous jury instruction.  After review of the record and the parties' briefs, we affirm the denial of habeas relief.

I

In relevant part, Fla. Stat. § 828.12(2) provides that "a person who intentionally commits an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes the same to be done, is guilty of a felony of the third degree[.]" The Florida Supreme Court has held that animal cruelty under § 828.12(2) is a general intent crime, so that a defendant need only intend to commit the act that resulted in the harm to the animal or animals.  *See Reynolds v. State,* 842 So.2d 46, 51 (Fla. 2002).  As summarized below, the state charged Mr. Horn with violating several criminal statutes, including § 828.12(2), and the jury found him guilty of violating § 828.12(2).

The state's evidence at trial showed that five of the adult dogs on Mr. Horn's premises were treated by animal services for puncture wounds, infections, untrimmed nails, and poor nutrition.  Some of the dogs, moreover, had scarring consistent with those on dogs which have fought, and the wounds were of different ages with sone

2

healed and others fresh.  The dogs otherwise appeared happy and well-cared for, though they were very aggressive towards each other.  The county veterinarian testified that the failure to keep the dogs apart was "mistreatment in the worst kind of way."

Mr. Horn testified on his own behalf at trial.  He explained that two of the dogs had scars because they had fought when one of his female dogs went into heat, that he tried to treat the wounds with non-prescription ointment, and that he kept those two dogs in separate pens after their fight.  He also said that he treated the dogs with over-the-counter medication for worms, though he was not sure whether he treated them for hookworms.

The trial court instructed Mr. Horn's jury as follows on the animal cruelty charge:

> To prove the crime of cruelty to animals, the state must prove the following element beyond a reasonable doubt. Number 1, Michael Horn knowingly committed an act or caused an act to be committed which resulted in excessive or repeated infliction of unnecessary pain or suffering to an animal.
>
> *Cruelty[,] torture or torment includes any act, omission for [sic] negligence whereby unnecessary or unjustifiable pain or suffering is caused, permitted or allowed to continue when there is reasonable remedy or relief except when done in the interest of medical science.*

The first portion of the charge was based on the Florida standard jury instruction for

3

felony cruelty to animals.  The second (and italicized) portion of the charge was based on a Florida standard jury instruction which is supposed to be given only when the cruel death of an animal is charged or when the state is seeking an enhanced sentence. *See* Fla. Std. Jury Instr. (Cr.) 29.13 (§ 828.12(2), Fla. Stat.).  Mr. Horn was not charged with the cruel death of animal, and the state was not seeking an enhanced sentence, so the second portion of the instruction should not have been given.

In closing argument, the prosecution asserted that Mr. Horn was guilty because he had taught his dogs to fight.  But the prosecution also relied on the second portion of the instruction during closing, suggesting to the jury that even if it believed his version of events Mr. Horn was guilty due to this negligence (e.g., "Even if you take that version of those facts with you, Mr. Horn is guilty of animal cruelty.  You see, he's negligent.").  The jury returned a general verdict of guilty on the animal cruelty charge.

On direct appeal, the Fifth District ruled that it was error for the second portion of the instruction to be given, but that Mr. Horn could not show fundamental error because the jury was properly instructed (through the first portion of the instruction) on the proper elements of the animal cruelty charge under § 828.12(2).  *See State v. Horn*, 17 So.3d 342, 342-43 (Fla. 5th DCA 2009).  The trial court later denied Mr. Horn's motion for post-conviction relief by relying on the Fifth District's ruling on

4

direct appeal, and concluded that Mr. Horn could not show prejudice from any deficient performance with respect to the instruction because the jury was properly instructed on the elements of the animal cruelty charge.  The Fifth District summarily affirmed the denial of post-conviction relief.

## II

In his habeas petition, Mr. Horn argued (as he does on appeal) that his trial counsel should have objected to the second and improper portion of the instruction, and that he was prejudiced by counsel's failure to do so.  The district court found that Mr. Horn's counsel had rendered deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984), by not objecting to the inclusion of the second (and erroneous) portion of the instruction.  But it concluded that Mr. Horn could not show prejudice under *Strickland* resulting from the deficient performance.  As the district court read Florida law, neglect could be the basis of animal cruelty under § 828.12(2) even where no animal died.  *See* R1:16 at 11-12 (citing and discussing Judge Griffin's concurring opinion in *Hynes v. State*, 1 So.3d 328, 330-31 (Fla. 5th DCA 2008)).

## III

The case is governed by AEDPA, which means that we may grant Mr. Horn habeas relief only if the Florida courts' decisions were "contrary to, or an

unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1).

Significantly, "[a]s a federal habeas court, we are not applying *Strickland* de novo,

but rather through the additional prism of AEDPA deference. Thus, under this doubly

deferential standard, '[t]he pivotal question is whether the state court[s'] application

of the *Strickland* standard was unreasonable. And if, at a minimum, fair minded

jurists could disagree about the correctness of the state court[s'] decision, the state

court[s'] application of *Strickland* was reasonable and AEDPA precludes the grant

of habeas relief." *Morris v. Secretary, Dept. of Corrections*, 677 F.3d 1117, ____ &

n.2 (11th Cir. 2012) (citations omitted / page references not available on Westlaw)

(noting in footnote 2 that standard set out in text with regard to performance prong

of *Strickland* also applies to the prejudice prong). Applying this standard, we affirm

the district court's denial of habeas relief.

We accept the Fifth District's conclusion that under Florida law the trial court

should not have given the second portion of the jury instruction on animal cruelty.

*See Horn*, 17 So.3d at 342-43. We also accept, for purposes of our discussion, the

district court's ruling that Mr. Horn's trial counsel rendered deficient performance

under *Strickland* by failing to object to the erroneous portion of the jury instruction.

The remaining question, then, is whether the Florida courts unreasonably concluded

that Mr. Horn had not shown prejudice under *Strickland*, i.e., had not shown a

6

reasonable probability that, but for his counsel's failure to object, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694. That question, in turn, requires us to evaluate the nature and effect of the second portion of the animal cruelty jury instruction.

As a general matter, a jury instruction may constitute reversible error when it broadens and constructively amends the indictment or information so that the defendant can be convicted of a crime that was never charged. *See, e.g., Stirone v. United States*, 361 U.S. 212, 217-19 (1960). For example, in *United States v. Peel*, 837 F.2d 975, 979-80 (11th Cir. 1988), we reversed a conviction because "the erroneous instruction . . . alter[ed] the charging terms of the grand jury indictment by advising the jurors that they could convict [the] appellant on the charged offense based on a finding that does not constitute an element" of the offense, and because it was not possible to say whether the conviction was based on the legally incorrect theory. To determine whether there was a constructive amendment here, we examine the second portion of the animal cruelty instruction.

Insofar as the second portion of the instruction mentioned "unnecessary or unjustifiable pain or suffering," there was not constructive amendment under *Stirone* and its progeny, for such language was merely duplicative of the first (and correct) portion of the instruction, which referred to "unnecessary pain or suffering." *See*

7

*Peel*, 827 F.2d at 979 ("A constructive amendment to the indictment occurs where the jury instructions 'so modif[y] the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment.'") (citation omitted). The same goes for the word "cruelty," which was also contained in the first portion of the instruction.

Moving on to the word "torture" in the second portion of the instruction, we conclude that its inclusion did not cause Mr. Horn any harm or prejudice. This is because there was no evidence of torture presented at trial, and therefore "no possibility that the jury convicted [Mr. Horn] on the basis of the extraneous element[] interjected by the jury charge." *United States v. Ylda*, 653 F.2d 912, 915 (5th Cir. Unit A Aug. 14, 1981).

That leaves the reference to "negligence" in the second portion of the instruction. As we see it, the use of the word "negligence" did not constitute a constructive amendment, for a recent intermediate appellate decision in Florida seems to support the district court's view that § 828.12(2) allows a conviction based on negligence even where no cruel death resulted.

In *State v. Morival*, 75 So.3d 810 (Fla. 2nd DCA 2011), the Second District held that systematically depriving animals of nourishment could be properly charged as felony animal cruelty. Relying in part on Judge Griffin's concurrence in *Hynes*, the

8

Second District explained that a felony charge under § 828.12(2) can be brought where "an owner does not feed a dog or feeds a dog so little that it suffers malnutrition over an extended period such that the animal loses a high percentage of its normal body weight." *Id.* at 812. The Second District's decision in *Morival* and Judge Griffin's concurrence in *Hynes* together suggest that the intentional act described in § 828.12(2) can be a negligent one. *See also Borrack v. Reed*, 53 So.3d 1253, 1259 (Fla. 4th DCA 2011) (May, J., specially concurring) ("The query then becomes whether a party can allege that a defendant was negligent in committing an intentional act? It appears that the answer is 'yes.'"). Thus, even if the jury convicted Mr. Horn based on his negligence, such a conviction would be consistent with, and not an improper constructive amendment of, the charge based on § 828.12(2). *See Parker v. Secretary, Dept. of Corrections*, 331 F.3d 764, 778 (11th Cir. 2003) ("an independent basis for a jury verdict is not insufficient if the relevant error is, considered separately, harmless"). *See also id.* At 778 n. 11 (noting that error with respect to jury instructions is not structural). At the very least, fair minded jurists could disagree about this point, and this means that the Florida courts' resolution of the prejudice prong of *Strickland* was not unreasonable.

Even if we have misread Florida law with respect to the mens rea under § 828.12(2), habeas relief is still unwarranted. The evidence of Mr. Horn's guilt,

9

though not overwhelming, was strong. First, some of the dogs had puncture wounds and fresh scars, suggesting that they had been fighting. Second, some of the dogs were also suffering from malnutrition and infections. Third, they jury was free to reject Mr. Horn's testimony and consider it as substantive evidence of guilt. *See, e.g., United States v. Brown*, 53 F.3d 312, 313-14 (11th Cir. 1995). On this record, we cannot conclude that the Florida courts' conclusion that Mr. Horn failed to show prejudice was unreasonable. To the contrary, under the required AEDPA deference, "we can 'say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,' and therefore 'substantial rights' were not affected. . . . [N]o reasonable jury would have been influenced by a jury instruction and prosecutorial argument on [a non-existent theory of] liability[.] *United States v. Hornaday*, 392 F.3d 1306, 1316-17 (11th Cir. 2004) (quoting *Kotteakos v. United States*, 328 U.S. 750 (1946), and applying the harmless error test enunciated in that case to situation where, as here, jury was improperly instructed on a non-existent theory of criminal liability (aiding and abetting) and prosecution argued that theory in closing argument).

## IV

The district court's denial of Mr. Horn's habeas corpus petition is affirmed.

**AFFIRMED.**

10