*822 ALTENBERND, Judge,
Concurring.
Having reached an age where I can readily identify with an old, worn-out dog, as a matter of personal morality, I believe it would have been ideal if Harley could have spent his final years in an upper-middle-class home surrounded by a loving family and in the care of a great veterinarian. But I am very troubled by the application of section 828.12(2), Florida Statutes (2011), to the facts of this case. If the issue discussed in this concurrence were preserved, it is unlikely that I would concur in this opinion. I am not entirely convinced that the recent amendments to this statute have solved the problems raised by this case.
The defendant, her son, and two of her neighbors confirmed that Mr. Ward was understood to be the original owner of this dog. He abandoned the dog at Ms. Brown’s residence when he left. He has not been prosecuted. Ms. Brown provided some food and care for the dog during the several-year period after Mr. Ward left. The neighbors, however, freely admit that they also fed and gave water to this animal. It had access to their barn, slept on their front porch, and was actually found by the animal control officer on the roadway easement in front of their property. The neighbors confirm that Ms. Brown had not been living in her mobile home for months at the time the animal control officer arrived to check on this dog.
The photographs in the record certainly show a very old, beat up, mixed-breed dog. They also show a collar on the dog with some type of a metal tag. The animal control surrender form states that the dog had a collar but no license or tag. The State never proved that Ms. Brown ever obtained a Pasco County tag for this dog. We have no knowledge about who, if anyone, ever registered as the owner of this dog.
The State’s information, tracking the language of the statute, claimed that Ms. Brown committed felony cruelty to an animal sometime between January 1 and December 31, 2011. Its case consisted of testimony from the animal control officer who picked up the dog in November 2011 and the veterinarian who examined the dog at that time. The dog had long-standing skin issues and a large neck tumor when examined. It had heart worms and hook worms. But the State does not clearly articulate what conduct Ms. Brown did or failed to do in the relevant period. There is little question that this woman on disability could not afford to pay for extensive veterinary treatment for this dog. Presumably, it is the State’s position that she was supposed to take the dog to the pound during that year so it could be euthanized, i.e., killed, sooner.
The legal issue that troubles me in this case is the fact that the applicable statute did not require the State to prove beyond a reasonable doubt that Ms. Brown was the owner of or otherwise had a legal duty to care for this dog. At the time of this offense, section 828.12(2) was a felony that could be committed by “a person.” When your neighbor severely beats your dog with a tire iron for sleeping in his yard, I have no problem with the idea that your neighbor can be a felon.
I am the author of State v. Morival, 75 So.3d 810 (Fla. 2d DCA 2011), which is discussed in the majority opinion. In that case, the two dogs were caged inside an apartment. The dogs, who were not elderly, were skin and bones despite a bag of food in the apartment. There was no issue raised in Morival, which reversed a pretrial dismissal of the State’s information, about whether the person in exclusive custody of the caged dogs had a legal duty to feed them or whether the statute was defective for failing to require proof of own *823 ership for some types of cruelty. But when a crime of animal cruelty is a matter of failure to provide care for an animal that has roamed freely in a neighborhood for a long time, I believe that a criminal statute needs to define more clearly when the legal duty of care arises.
The motion for judgment of acquittal in this case did not argue that the State was required to prove ownership or that the statute was unconstitutional in the absence of that requirement. Ms. Brown did not propose any special instructions about ownership. Accordingly, this case went to the jury under instructions that merely required the State to prove that she was a person who committed “any act, omission, or negligence whereby unnecessary or unjustifiable pain or suffering” was caused to this dog. Under that standard, I reluctantly conclude that the State met its burden.
The humane care and treatment of animals is a moral imperative that does and should define our American culture. But when we point a finger of blame at this disabled woman for her failure to euthanize what seemingly had become a neighborhood dog, we should accept that we are pointing three fingers at ourselves. It seems that women too often suffer adverse legal consequences when men abandon the women, leaving behind economic problems for which the men ought to take personal responsibility. I am not very convinced that third-degree felony prosecutions of indigent women for failure to care for or to euthanize the abandoned dogs of boyfriends is the most effective method to implement our cultural moral imperative.